THE STATE, EX REL. HAMLIN, APPELLEE AND CROSS-APPELLANT, *v.*
COLLINS, SUPT., ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as State, ex rel. Hamlin, *v.* Collins (1984), 9 Ohio St. 3d 117.]

(No. 83-673—Decided February 1, 1984.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, James E. Melle Co., L.P.A.,* and *Mr. Mark R. Scherer,* for appellee and cross-appellant.

*Ennis, Roberts & Fischer Co., L.P.A.,* and *Mr. J. Michael Fischer,* for appellants and cross-appellees.

*Per Curiam.* This case presents several issues for determination. The board appeals, contending first, that the grant of the writ of mandamus for back pay was improper and second, that if it was proper, certain deductions must be made from the figure reached by the court of appeals. Hamlin cross-appeals claiming that he is entitled to certain additions to that figure. This court concludes that the board is correct with regard to the issue of deductions for vacation pay and insurance premiums but that in all other respects the court of appeals' resolution of the cause is correct.

I

The first issue presented is whether Hamlin is entitled to a writ of mandamus to compel the board to award him back pay. In *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190 [61 O.O.2d 425], this court established the rule regarding wrongfully discharged public employees who seek to recover back pay:

"An action in mandamus is maintainable by a reinstated public employee to recover compensation due him for the period of time during which he was wrongfully excluded from his employment, provided the amount recoverable is established with certainty."

*Monaghan* also stated, at page 195, that the amount of compensation recoverable was that which the employee would have received had he not been wrongfully dismissed, reduced by the amount he earned, or in the exercise of due diligence could have earned in appropriate employment, during the discharge period.

The board contends that Hamlin is not entitled to a writ of mandamus because he failed to plead and prove, with certainty, what he was entitled to recover. The court below granted Hamlin virtually every item of compensation sought except for expenses incurred in bringing the action and raises granted other employees during his absence. According to the board, the failure to establish with certainty the amount of any such salary increases he would have received, even though denied by the court, results in Hamlin's failure to establish with certainty what amount of back pay he would have earned. It should be noted that the board does not contest that if Hamlin had not been discharged he would have earned $24,246.72. Additionally, the board argues that the duty to establish interim earnings rests with the employee seeking compensation and that Hamlin has failed to prove the amount of interim earnings received during the period of his discharge. These arguments are without merit.

In essence, the board's argument is nothing more than an assertion that because Hamlin did not succeed on each and every element of compensation sought, he has not proven with certainty the total amount of back pay to which he is entitled. Nowhere in this court's prior decisions has a rule been set forth that disagreement as to the validity of or failure to succeed on component parts of the award negates the right to succeed on others or prevents the amount to be recovered from being established with certainty. On numerous occasions this court has reviewed various elements of compensation sought to be recovered by a wrongfully discharged public employee, allowing some and denying others. For instance, in *State, ex rel. Guerrero,* v. *Ferguson* (1981), 68 Ohio St. 2d 6 [22 O.O.3d 98], relators prevailed on the issue of back pay but were denied their claims as to credits for vacation and sick leave and lost medical coverage. Furthermore, in *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363 [21 O.O.3d 228], the relator was granted back pay with a salary increase as well as interest on the award. He was, however, unsuccessful on claims relating to credits for vacation days, holidays, sick leave hours, and attorney's fees. These cases conclusively demonstrate that an award of back pay to a wrongfully discharged public employee is based on "certainty," not that every claim asserted must be successful in order for any award to be granted.

With regard to the claim that Hamlin failed to prove his interim earnings, the short answer is that he presented evidence that he received $4,915.92 from other employers and $4,680.00 in unemployment compensation during the period of his wrongful discharge. If the board was unsatisfied with these figures it had the opportunity to controvert them. Having failed to do so, the board cannot now come forth and assert that Hamlin failed in his proof.

Additionally, this court, in *State, ex rel. Martin,* v. *Columbus* (1979), 58 Ohio St. 2d 261 [12 O.O.3d 268], has already addressed the issue of who bears the burden of proof with regard to interim earnings:

"The principle of mitigation of damages applicable in a suit to recover compensation for a period of wrongful exclusion from employment is an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." *Id.* at paragraph three of the syllabus.

It is true that the dispute in *Martin* was not over the amount of interim earnings but whether due diligence in obtaining employment had been exercised. However, since the amount of interim earnings is to be deducted from an award of back pay, and thus reduce the employer's obligation to pay, it is in the nature of an affirmative defense. Thus, under *Martin,* the burden of showing just what Hamlin earned during the period of his wrongful discharge rests upon the board. Since the board failed to question the information Hamlin provided concerning his interim earnings, this court concludes that those earnings have been established with certainty. *Monaghan* v. *Richley, supra.*

## II

The next issue presented is whether the court of appeals was correct in awarding $748 for health insurance and $437.50 for life insurance allegedly expended by Hamlin to purchase coverage comparable to what he would have received from the board. Once again, the standard for recovery of such fringe benefits is that the amount sought to be recovered must be established with certainty. *State, ex rel. Guerrero,* v. *Ferguson, supra; Monaghan* v. *Richley, supra.* The record indicates that if Hamlin had not been discharged, he would have received $15,000 of term life insurance at a cost to the board of $4.62 per month. Also, prior to the time of the discharge, Hamlin had cancelled his health insurance, opting to be covered under his wife's health insurance plan.

The term "with certainty" has never been completely defined in the prior opinions of this court. In most cases it has referred to the question of whether a particular amount has been precisely determined as to its value in dollars and cents. See, *e.g., State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234 [74 O.O.2d 378]. However, in some cases "with certainty" must also refer to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays. *State, ex rel. Crockett,* v. *Robinson, supra,* at 368-369. This Hamlin has failed to do.

The sole evidence supporting Hamlin's claim for payment of insurance premiums is his self-serving affidavit. Insurance is a commodity where the purchase price and extent of coverage are readily ascertainable with certainty. If Hamlin did in fact purchase replacement coverage he could have proven his costs and coverage in a variety of ways including: a cancelled check for premiums paid; receipts from the insurer; the policy or policies themselves demonstrating the extent of coverage and premiums owed; or an affidavit from the insurance agent or the company setting forth the type and amount of insurance purchased, together with the purchase dates and the premiums paid. A review of the record fails to reveal any demonstrable evidence whatsoever indicating what type or amount of insurance was purchased or that any insurance was, in fact, purchased in lieu of what Hamlin would have received through his employer. Without such evidence, Hamlin has failed to prove "with certainty" his entitlement to reimbursement of the $1,185.50 allegedly paid for insurance premiums. The court of appeals erred in allowing this amount as an element of Hamlin's claim for back pay.

## III

The third issue is whether the court of appeals erred in refusing to deduct $1,288.80 paid to Hamlin as accrued but unused vacation credit at the time of his removal, from the $24,246.72 found due and owing for the period between February 26, 1979, and June 15, 1980. This court concludes that the court of appeals did err.

The record demonstrates that the board does not permit its employees to receive vacation pay in lieu of taking a vacation. Thus, employees cannot elect to work through their vacations and be paid the monetary equivalent of a vacation credit in addition to their regular salaries.

It is a well-settled rule in these cases that the state cannot be required to pay twice. *State, ex rel. Crockett,* v. *Robinson, supra; State, ex rel. Guerrero,* v. *Ferguson, supra.* The board argues that if the amount in this instance is not deducted then Hamlin receives more than his annual salary and the state pays twice. Hamlin contends that two different time periods are involved precluding a double payment: the vacation pay accruing prior to his removal, and the back pay compensating for the time of his wrongful discharge. The board's position is well-taken.

The court of appeals found that Hamlin would have earned $24,246.72 between February 26, 1979, and June 15, 1980, had he not been wrongfully discharged. However, although Hamlin was dismissed on February 26, the record reveals that he was not taken off the employment records, for payroll purposes, until March 22. The interim between those two dates represented the amount of vacation time, eighteen work days or $1,288.80, which Hamlin had accrued up to the time of his dismissal. When the amount of $1,288.80 was paid for the period of February 26 through March 21 and yet the court of appeals ordered back pay to February 26, it is obvious that Hamlin is being paid twice for those eighteen days. Stated otherwise, if Hamlin had remained in the board's employ from February 26, 1979, to June 15, 1980, he would have earned $24,246.72. If he is entitled to recover back pay for that period without any deductions for the vacation pay he received, Hamlin will have been paid $25,535.52. Quite clearly this represents a double payment in part by the state and cannot be allowed.

## IV

A further issue is whether the court of appeals correctly computed the dollar amount which the board is required to contribute to Hamlin's Public Employees Retirement System ("PERS") account. The board maintains that its duty to make PERS contributions should only be based on the net amount of back pay found owing rather than the gross figure of $24,246.72 as ordered by the court of appeals. This argument is without merit.

R.C. 145.01 defines an employee's salary for purposes of determining PERS contributions as the "* * * salary or wages *receivable* during a payroll period * * *." (Emphasis added.) Contrary to the board's contention, the term "receivable" is not functionally equivalent to "received" or "paid." Instead, the term "receivable" is to be equated with "due" or "owing." See Webster's New International Dictionary (2 Ed. 1956). Hamlin has already established with certainty that the sum of $24,246.72, the figure used by the court of appeals to compute PERS contributions, was "due or owing."

Additionally, to allow the board to pay a reduced sum into Hamlin's PERS account on the basis of a setoff for other funds received during the period of his dismissal would confer upon the board a benefit directly attributable to its own wrongdoing. See *State, ex rel. Martin,* v. *Columbus, supra.* Had Hamlin not been wrongfully discharged the board would have been obligated under R.C. Chapter 145 to contribute a percentage of $24,246.72 into Hamlin's PERS account. The board will not be allowed to

benefit from its wrongdoing and pay a percentage of a reduced dollar amount into Hamlin's account.

V

By way of cross-appeal, Hamlin contends that the court below erred in denying him compensation for salary increases granted to other employees of the board in 1979 and 1980. Hamlin also claims error in the denial of $775.79 in personal costs incurred in challenging his discharge. Based upon prior pronouncements by this court, the judgment of the court of appeals on these issues was correct.

In March 1979, and again in March 1980, the board granted raises in varying amounts to its employees. The minimum raise granted in 1979 was seven percent, that in 1980 was 2.62 percent. Although there is no evidence in the record to show what Hamlin would have received by way of a pay raise, if any, he argues that he should be given the minimum increase granted in each of those years.

Such an argument is purely speculative and falls far short of establishing "with certainty" what Hamlin would have earned. Hamlin has failed to demonstrate that he would have received any raise at all, let alone what its amount would have been. A willingness to accept the minimum raise given others is not sufficient to satisfy the "with certainty" standard. This case differs from *State, ex rel. Crockett,* v. *Robinson, supra.* There, the employee "proved by testimony, by an exhibit, and by stipulation that he would have received a salary award which included the salary increases." *Id.* at 366. No such demonstration was made in the present case.

Finally, Hamlin is not entitled to recover his out-of-pocket expenses in bringing this action. His claim included charges for meals, lodging, parking and photocopying. The court of appeals equated this claim with one for attorney's fees and denied recovery on the basis that there had been no showing of bad faith on the board's part. *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184 [71 O.O.2d 499]. In fact the expenses listed by Hamlin are a step further removed from recovery than are attorney's fees. However, since this court finds no bad faith it is unnecessary to consider whether such personal expenses can be recovered along with attorney's fees.

In conclusion, the judgment of the court of appeals is reversed insofar as the amount credited to Hamlin for insurance coverage was improperly allowed and his previously paid vacation pay is to be deducted from the amount of compensation found to be owed. In all other respects, the judgment is affirmed.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C.J., W. BROWN, FORD, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

FORD, J., of the Eleventh Appellate District, sitting for SWEENEY, J.