THE STATE, EX REL. MARTIN, APPELLANT, *v.* BEXLEY CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as State, ex rel. Martin, *v.* Bexley Bd. of Edn. (1988), 39 Ohio St. 3d 36.]

(No. 87-880—Submitted July 27, 1988—Decided October 5, 1988.)

*Lucas, Prendergast, Albright, Gibson & Newman, Robert J. Walter* and *Mark R. Scherer,* for appellant.

*Vorys, Sater, Seymour & Pease* and *William G. Porter II,* for appellee.

H. BROWN, J. The primary issue in this case is a simple one: In a mandamus action to recover compensation for a period of wrongful discharge from employment of a public employee, does the employer bear the burden of establishing with reasonable certainty the amount that the employee could have earned in. appropriate employment during the period of exclusion? We answer this query affirmatively and therefore reverse the judgment of the court of appeals on this issue.

I

A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employment, "provided the amount recoverable is established with certainty." *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190, 61 O.O. 2d 425, 291 N.E. 2d 462, syllabus. This compensation is subject to reduction by the amount the employee earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion. *State, ex rel. Martin,* v. *Columbus* (1979), 58 Ohio St. 2d 261, 12 O.O. 3d 268, 389 N.E. 2d 1123, paragraph two of the syllabus; *State, ex rel. Wilcox,* v. *Woldman* (1952), 157 Ohio St. 264, 47 O.O. 164, 105 N.E. 2d 44, paragraph one of the syllabus; *Monaghan, supra,* at 195, 61 O.O. 2d at 428, 291 N.E. 2d at 465.

The court of appeals referee found that Martin "[had] proved, with cer-

tainty, that the back pay lost as a result of * * * [the board's] action for the period in ·question was $50,367.70.''

The board argued that shortly after her wrongful discharge, Martin accepted a ''substantially similar'' position with Hallmark Management Service as manager of its food service unit at Capital University. The board contended that Martin resigned from Hallmark soon after she began working there. Thus, the board argued, Martin had failed in her duty to mitigate damages and any amount of compensation that it owed to Martin must be offset to the extent of what she could have earned had she not resigned.

Martin in effect contended that she terminated her employment with Hallmark when the hours of employment were greatly expanded, without an accompanying pay increase, beyond the hours that were understood at the time she accepted the position. Martin argued further that no offset should be granted because the Hallmark position became an unsuitable substitute position.

The referee found that Martin ''ha[d] not proved that the Hallmark position was not a suitable substitute employment otherwise avoiding the mitigation effect.'' The referee apparently believed that Martin had failed to meet *her* burden of establishing with reasonable certainty the amount that she *could have earned* from Hallmark had she not resigned. Thus, the referee recommended that the writ be denied because the amount recoverable could not be ascertained.

The court of appeals followed the referee's recommendation and denied the writ and the entire compensation claim, notwithstanding the fact that it found that Martin had produced ''clear evidence of the amounts that she would have earned with * * * [the board] during the period that she was wrongfully excluded from her employment.'' In reaching their conclusions, both the court and the referee erroneously placed the burden of establishing the *amount* that could have been earned in mitigation upon the employee, instead of the employer responsible for the wrongful discharge.

Martin demonstrated with certainty the amount that the board owed her — $50,367.70. The burden of proving that Martin failed to mitigate damages by quitting the position with Hallmark resides upon the board, since it is in the nature of an affirmative defense. *State, ex rel. Martin, supra,* at paragraph three of the syllabus. It is the generally accepted rule that the employer bears the burden of showing that the employee either found or could have found other similar employment and, *in the absence of proof, the employee is entitled to recover the salary fixed by contract.* 11 Williston, Contracts (3 Ed. 1968) 312, Section 1360. Since the amount of interim earnings is to be deducted from an award of back pay (thus reducing the employer's obligation to pay), the burden of showing what an employee *earned* during the period of wrongful discharge rests upon the employer. *State, ex rel. Hamlin,* v. *Collins* (1984), 9 Ohio St. 3d 117, 119, 9 OBR 342, 344, 459 N.E. 2d 520, 523. It logically follows that the employer also shoulders the burden of proving the amount that the wrongfully excluded employee *could have earned* in mitigation of damages. See *McAleer* v. *McNally Pittsburgh Mfg. Co.* (C.A. 3, 1964), 329 F. 2d 273, 275-276. Accordingly, we hold that in a mandamus action to recover compensation for the period following a wrongful discharge of a public employee, the employer

bears the burden of establishing with reasonable certainty the amount that the wrongfully excluded employee could have earned in appropriate employment during the period of exclusion.

. The court of appeals must review the evidence of record and determine whether the board has met its burden of establishing with reasonable certainty the amount that Martin could have earned in appropriate employment during the period of exclusion had she not resigned from Hallmark.[1] If the board fails to show that the amount is ascertainable, then the amount that could have been earned from Hallmark should not be subtracted from the amount of the back pay award.

## II

The court of appeals did not determine whether Martin was entitled to $2,000 severance pay or prejudgment interest on the total award. We direct the court to review the record and report of the referee and determine whether Martin is entitled to these amounts.

## III

The court of appeals denied Martin's request for attorney fees and costs because Martin "failed to establish her right to recovery." In light of our ruling on this issue, the court should determine whether the board's failure to compensate Martin was the result of bad faith. *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 369, 21 O.O. 3d 228, 232, 423 N.E. 2d 1099, 1103; *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177, 75 O.O. 2d 224, 347 N.E. 2d 527.

## IV

The court of appeals ruled that Martin failed to prove with certainty that medical and dental bills would have been paid under her insurance plans with the board. The evidence supports the court's ruling on the bills

---

[1] The court of appeals stated that Martin produced evidence of back pay and of interim earnings. The court of appeals referee found the amount of back pay to be $50,367.70, and the parties stipulated that Martin received $8,296 in unemployment compensation and $8,549.89 from interim employment. The court should determine whether these amounts should be subtracted from the back pay award of $50,367.70.

The court of appeals ruled that the preponderance of evidence indicated that Martin had failed to mitigate damages by resigning from Hallmark because "the duties of the Hallmark job were, if anything, less than that which she had had with * * * [the board]." Although not expressly stated, apparently the appellate court believed that the Hallmark position was similar employment to the position from which Martin was wrongfully terminated. The court observed that the amount that Martin could have earned from Hallmark could not be proved with certainty because "the only evidence concerning earnings with Hallmark was * * * [Martin's] starting salary and the amount that she earned in the one month before she resigned." However, the record contains the additional information that the terms of Martin's employment with Hallmark were that she was to be paid $11,800 annually, that she would be reviewed for a $500 increase after six months and that the employment relationship could be terminated by either party on fourteen days' written notice.

If the court determines that the amount Martin could have earned with Hallmark is ascertainable, the court must exercise care to avoid the double-deduction which would occur if Martin's interim earnings were related to the same time period as her contract for employment at Hallmark.

and, therefore, we affirm the judgment of the court as to these items.

For the foregoing reasons, the judgment of the court of appeals is reversed in part, affirmed in part and the cause is remanded to the court of appeals for further proceedings consistent with this opinion.

*Judgment reversed in part, affirmed in part and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

