The STATE ex rel. BUTTERBAUGH

v.

ROSS COUNTY BOARD OF COMMISSIONERS et al.

[Cite as *State ex rel. Butterbaugh v. Ross Cty. Bd. of Commrs.* (1992), 79 Ohio App.3d 826.]

Court of Appeals of Ohio,
Ross County.

No. 1782.

Decided May 5, 1992.

*Thomas M. Spetnagel,* for relator.

*Richard G. Ward,* Ross County Prosecuting Attorney, for respondents.

*Per Curiam.*

This is an original action in mandamus which is before this court upon the motion for partial summary judgment of Ernest W. Butterbaugh, relator, and the memorandum opposing the motion for partial summary judgment filed by

the Ross County Board of Commissioners and Thomas Hamman, Ross County Sheriff, respondents.

On May 22, 1991, relator filed a complaint seeking a writ of mandamus compelling respondents to reinstate him to his previous position of "Staff Lieutenant—Head of Civil Division" and to provide him with full back pay and related benefits "due him." On June 14, 1991, respondents filed an answer admitting that there was a dispute between the parties as to the amount of back pay and related benefits, if any, to which relator was entitled, and further admitting that relator had not been reinstated to a position designated as "Staff Lieutenant—Head of Civil Division." Two of the affirmative defenses noted in respondents' answer were that relator failed to use ordinary diligence in order to mitigate his damages and that relator had failed to exhaust his legal remedies where an adequate remedy at law existed.

A subsequent pretrial order of this court instructed the parties to file evidence, motions, and briefs by a specified date. Depositions of relator and respondent Ross County Sheriff Thomas Hamman were filed. The foregoing summary judgment evidence provided, in pertinent part, as follows. Relator graduated from Southeastern High School in 1969. Prior to and during high school, relator held jobs as a stable boy and horse groom. Following high school, relator worked for four different employers as a general laborer. In January 1974, relator began working for the Ross County Sheriff's Department as a deputy sheriff. In 1985, Sheriff Hamman formulated a job description for the position of "Lieutenant—Civil Division" within his office. The position included, *inter alia*, the following duties and responsibilities: (1) supervisory duties including setting up training programs for Civil Division personnel; (2) serving orders of the civil court; (3) administrative duties such as preparing reports on division activities; (4) routine police duties; and (5) reporting directly to the sheriff. Relator became employed in the foregoing "Lieutenant—Civil Division" position with the sheriff's department. This job description was still in effect on the date of relator's termination.

By memorandum dated November 7, 1989, Sheriff Hamman attempted to reassign relator to the position of "Communications Supervisor and Training Officer." However, although the sheriff intended that this reassignment take effect immediately, he postponed the effective date of the reassignment to January 1, 1990 in order that relator could finish some of his remaining civil assignments. Ultimately, since relator did not work following January 1, 1990, this purported new position was, in the sheriff's own words, "never actuated." The November 7, 1989 reassignment memorandum directed to relator was the only document reflecting the purported job change, and the memorandum was never filed with any agency outside the sheriff's depart-

ment. More specifically, the new position description was never filed with the Department of Administrative Services.

On January 30, 1990, relator was terminated from his employment with the sheriff's department. The stated reason for his termination was insubordination due to his taking an overdose of prescribed medication and failing to report it. During relator's period of employment with the sheriff's department from January 1974 through January 30, 1990, he obtained off-duty officer jobs at various places and for various functions through the sheriff's department. Following his termination, relator worked for Alexander's Body Shop, where he earned $1,000 prior to being laid off.

During the period of his unemployment, relator made the following efforts to locate employment: (1) he talked to Glenn Price, who was involved in real estate, insurance, and bail bonds, in February 1990, and was advised there was no job and that Price "didn't want to get involved in anything"; (2) he talked to Charles Kneisley of Top Quality Auto Parts; (3) he called sheriff's departments of several surrounding counties and they said there were no openings and that he would have to relocate in those counties to be employed by those departments; (4) he and his sister in Columbus checked the want ads and classified section of the newspaper; (5) he contacted Bryan Theobald of Mead, who told him that there was no need to formally apply for employment with their police/security force, since it was not hiring; (6) he contacted the Ohio Department of Liquor Control and determined that it was not hiring; (7) he stopped by the Ohio Bureau of Employment Services several times to check for posted jobs; (8) he was advised by Keith Ault that one of the two local correctional facilities had an investigator's position that it might be trying to fill, but after relator told Ault that he was interested in the position, he never heard anything else about it; (9) he was told by Don Detillion of Martin Marietta that it was not accepting job applications and was not hiring; and (10) he never applied for a position with the Chillicothe Police Department because his age exceeded its restriction. Relator did not personally contact the two local correctional facilities and did not sign up for any of the job-locating services provided by the Ohio Bureau of Employment Services or other agencies. Additionally, relator could not remember ever filing any formal job applications because usually he was advised that prospective employers were not accepting applications. Sheriff Hamman noted that he conducts a background check on applicants who apply for any entry level position with his department and that he would not be inclined to hire someone who had been discharged from another law enforcement agency for a violation of that agency's drug abuse policy.

In March 1990, relator sold a residence which he had previously purchased for $63,000 to $65,000 and sold it for $89,000. Most of the money relator received from the sale went towards the purchase of new property in April or May 1990. After the purchase, relator helped to build a new house on his property.

On or about December 14, 1990, the State Personnel Board of Review ordered in case No. 90–REM–02–0660 that relator's removal order be disaffirmed, that he be reinstated to his previous position, and that in lieu of removal, relator be suspended for ten days without pay. On December 17, 1990, relator was reinstated on respondents' payroll, although he did not return to actual employment with the sheriff's department until sometime in February 1991. The position which Sheriff Hamman attempted to assign to relator upon his return to duty was outlined in a February 8, 1991 memoranda to relator. This "ASSIGNMENT OF DUTIES" noted that relator was assigned to "Communications Duty," that he reported directly to Lt. David Large, that he did not have any supervisory or investigative duties, and that he could not carry any firearms. This new position description was never filed with the Department of Administrative Services or any other agency.

Sheriff Hamman admitted in his deposition that by this new assignment, he had not reinstated relator to his previous position, regarding duties and responsibilities, as ordered by the State Personnel Board of Review. Sheriff Hamman noted that the new assignment differed from both relator's previous position as "Lieutenant—Civil Division" and the attempted November 7, 1989 reassignment position of "Communications Supervisor and Training Officer." Of the six lieutenants currently employed by the sheriff's department, relator is the only lieutenant assigned to the communications department and the only lieutenant without supervisory powers.

From the date of his termination from the sheriff's department, January 30, 1990, until the date of his reinstatement with the sheriff's department, December 17, 1990, relator would have earned a base pay of $14.32 per hour based upon a forty hour work week had he not been unlawfully removed from his employment. Sheriff Hamman testified that although all of the lieutenants worked overtime during that period, it was his opinion that relator would not have worked any overtime had he continued his employment through the period because, in the past, relator had worked very few overtime hours. Shortly following his termination, relator received $3,021.81 as payment for his accumulated vacation hours earned prior to his termination. Sheriff Hamman testified that he was unsure what respondents' PERS contribution to relator's pension would have been during the relevant period.

■ Relator's motion for partial summary judgment asserts that he is, as a matter of law, entitled to recover $22,212.43 in back pay, prejudgment interest on the back pay, attorney fees incurred in this mandamus action, as well as reinstatement to his previous position, including duties and responsibilities of "Lieutenant—Civil Division" in the Ross County Sheriff's Department. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Betts v. Windland* (Nov. 4, 1991), Washington App. No. 90CA39, unreported, at 6, 1991 WL 238204; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the party moving for summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Additionally, should we find relator's motion for partial summary judgment to be meritorious, either in whole or in part, we must specify the uncontroverted material facts through this decision and entry in order to articulate what shall be deemed established at subsequent proceedings. *Couto v. Gibson* (1990), 67 Ohio App.3d 407, 587 N.E.2d 336; Civ.R. 56(D).

■ Relator initially asserts that this court should issue a writ of mandamus compelling respondents to provide him with $22,212.43 in back pay, since there is no genuine issue of material fact that this is the amount of back pay due him for the period of time he was wrongfully excluded from his employment with the sheriff's department. A writ of mandamus is an extraordinary legal remedy granted only in those cases where relief cannot otherwise be obtained. *Columbus S. Power Co. v. Ohio Dept. of Transp.* (1989), 63 Ohio App.3d 612, 619, 579 N.E.2d 735, 740. In order for a writ of mandamus to issue, relator must establish that he has a clear legal right to the relief prayed for, that respondents are under a clear legal duty to perform the acts, and that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Dublin v. Delaware Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 55, 60, 577 N.E.2d 1088, 1093; *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 113, 579 N.E.2d 705, 707; *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50–51, 451 N.E.2d 225, 226; certiorari denied (1983), 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723.

■ A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employ-

ment, provided the amount recoverable is established with certainty. *State ex rel. Martin v. Bexley Bd. of Edn.* (1988), 39 Ohio St.3d 36, 37, 528 N.E.2d 1250, 1251; *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. This compensation is subject to reduction by the amount the employee earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion. *Bexley Bd. of Edn., supra; Monaghan, supra.*

Relator contends that the amount of his recoverable compensation has been shown to be as follows:

| | | |
|---|---|---|
| 1832 hours $\times$ \$14.32 = | \$26,234.24 | (back pay due) |
| | − 1,000.00 | (amount earned by employment) |
| | − 3,021.81 | (payment for accum. vacation) |
| | \$22,212.43 | recoverable compensation |

Respondents do not explicitly controvert the foregoing calculation, but instead generally claim the existence of a "significant issue of fact as to whether Relator exercised due diligence in seeking to mitigate his damages." The principle of mitigation of damages applicable in a suit to recover compensation for a period of wrongful exclusion from employment is an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge. *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 119, 9 OBR 342, 344, 459 N.E.2d 520, 523; *State ex rel. Martin v. Columbus* (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph three of the syllabus. It is the generally accepted rule that the employer bears the burden of showing that the employee either found or could have found other similar employment and, in the absence of proof, the employee is entitled to recover the salary fixed by contract. *Bexley Bd. of Edn., supra,* 39 Ohio St.3d at 38, 528 N.E.2d at 1252. Employees wrongfully excluded from employment need only accept similar employment in mitigation. *Frith v. Princeton City School Dist. Bd. of Edn.* (July 14, 1982), Hamilton App. No. C–810789, unreported, 1982 WL 8619.

Respondents claim that the genuine issue of material fact precluding summary judgment on the compensation issue is supported by relator's deposition testimony and answers to requests for admission indicating that he failed to file a single formal job application, failed to sign up with any employment service or agency, and that he spent time building his new house during his period of unemployment. However, as noted by the Ohio Supreme Court in *State ex rel. Martin v. Columbus, supra,* citing Judge McCormac's dissent in the appellate court's decision:

" 'Respondent has failed to produce any proof that jobs suitable for relator were available had she made a greater effort to find work. Instead, respondent, who is the wrongdoer, seeks to place the burden completely on relator in regard to mitigation, themselves merely carping at relator's lack of effort to save respondent damages for respondent's breach. That is unfair and contrary to law. *Id.*, 58 Ohio St.2d at 265, 12 O.O.3d at 270, 389 N.E.2d at 1125.' "

The employer shoulders the burden of proving the amount that the wrongfully excluded employee could have earned in mitigation of damages. *Bexley Bd. of Edn., supra,* 39 Ohio St.3d at 38, 528 N.E.2d at 1252. Moreover, it has been held that a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 103, 570 N.E.2d 1101, paragraph three of the syllabus. Respondents, in the case at bar, have simply failed to adduce any summary judgment evidence that either similar employment was available or assuming, *arguendo*, the existence of similar employment, the amount relator could have earned. By relying solely on relator's asserted lack of diligence, respondents have failed, as a matter of law, to raise a genuine issue of material fact concerning the mitigation issue, upon which they had the ultimate burden of production. Accordingly, relator's partial summary judgment motion is granted as to his entitlement to $22,212.43 in recoverable compensation.

However, we are not in the position at this time to issue a writ of mandamus for this amount, because recoverable compensation must be established "with certainty." *Bexley Bd. of Edn., supra; Monaghan, supra.* Relator admits in his motion for partial summary judgment that he believes the issue of overtime compensation due for the period of wrongful exclusion is not resolvable by summary judgment. By admitting the foregoing issue, relator had not established the total amount of recoverable compensation with the required certainty for the issuance of mandamus. If we were to hold otherwise, we would be issuing writs of mandamus on each piece of recoverable compensation, *i.e.*, normal wages, vacation pay, overtime wages, and PERS contributions. It is preferable, under the circumstances, to await proof by relator establishing the *total amount* of his recoverable compensation with certainty prior to issuing a writ of mandamus awarding an amount due, since relator has the burden of proof on such matter. *Dublin, supra; Berger, supra.* Although he is not yet entitled to mandamus until the *total* recoverable compensation is established with certainty, we find relator has established as a matter of law, that he is entitled to partial summary judgment to the extent of the $22,212.43 proven, and this fact shall be deemed established for further proceedings on this matter pursuant to Civ.R. 56(D).

Relator next contends that he is entitled to summary judgment on the issue of mandamus, since respondents failed to reinstate him to his previous position of "Lieutenant—Civil Division." An action in mandamus is a proper course by which wrongfully discharged public employees may seek to compel their employer to abide by orders of the State Personnel Board of Review disaffirming their discharges. Cf., *e.g., Bispeck v. Bd. of Commrs. of Trumbull Cty.* (1988), 37 Ohio St.3d 26, 27, 523 N.E.2d 502, 503; see, also, *State ex rel. Kabatek v. Stackhouse* (1981), 66 Ohio St.2d 64, 20 O.O.3d 58, 419 N.E.2d 877. In the case at bar, it was uncontroverted that the State Personnel Board of Review ordered that relator be "reinstated to his previous position." The term "position" is unambiguous and refers to a "group of duties intended to be performed by an individual employee," *i.e.,* duties and responsibilities. *State ex rel. Olander v. Ohio Environmental Protection Agency* (1989), 45 Ohio St.3d 196, 543 N.E.2d 1262; Ohio Adm.Code 124–1–02(N). Respondent Sheriff Hamman admitted that he failed to reinstate relator to his former duties and responsibilities in the position of "Lieutenant—Civil Division." Furthermore, he admitted that he even failed to reinstate relator to his attempted reassignment position of "Communications Supervisor and Training Officer." This latter position was never effective because it was not filed with the Department of Administrative Services. See, *e.g.,* Ohio Adm.Code 123:1–8–03. Therefore, there is no genuine issue of material fact that relator is entitled to reinstatement in his former position of "Lieutenant—Civil Division."

Respondents' sole argument in opposition to this portion of relator's motion for partial summary judgment claims that relator has an adequate remedy at law by administrative appeal to the State Personnel Board of Review. Respondents do not assert that relator's true former position is that of "Communications Supervisor and Training Officer." Although respondents claim that they have attached a copy of relator's administrative appeal, the record contains no such copy. We agree with respondents that the availability of an administrative appeal ordinarily constitutes a plain and adequate remedy in the ordinary course of law that would preclude the extraordinary legal remedy of mandamus. See, *e.g., State ex rel. Casey Outdoor Advertising, Inc. v. Ohio Dept. of Transp.* (1991), 61 Ohio St.3d 429, 575 N.E.2d 181. However, in *Olander, supra,* a case involving mandamus seeking reinstatement of a public employee to his former position, the Ohio Supreme Court rejected such contention by noting as follows, 45 Ohio St.3d at 198, 543 N.E.2d at 1264:

"In its third proposition of law, the OEPA maintains that a writ of mandamus should not issue because Olander's remedy is under R.C. 124.03. Again, as the court of appeals did before us, we disagree. R.C. 124.03 provides, among other things, for the State Personnel Board of Review to

hear appeals of classified employees regarding a 'reduction in pay or position.' An R.C. 124.03 appeal would be Olander's remedy if he had been reinstated in his former job as required by the common pleas court's order, and had been subsequently assigned the duties he is presently performing. The OEPA, however, has yet to comply with that order. Until this happens, Olander's recourse is through enforcement, not another civil service appeal."

Analogously, relator is not precluded from seeking enforcement of the State Personnel Board of Review's reinstatement order, which was not appealed by respondents, by virtue of mandamus. Relator's motion for summary judgment is granted as to reinstatement of relator to his former position of "Lieutenant—Civil Division" and the duties and responsibilities included in that job description.

Relator asserts that he is entitled to interest on his back compensation. In the absence of a statute requiring it, or a promise to pay it, interest cannot be adjudged against the state for delay in the payment of money. *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 126–127, 5 OBR 258, 260, 449 N.E.2d 763, 766. However, a contrary rule has been applied with regard to interest assessed against a municipal corporation. *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 21 O.O.3d 228, 423 N.E.2d 1099; *State ex rel. Dean v. Huddle* (1976), 45 Ohio St.2d 234, 74 O.O.2d 378, 344 N.E.2d 138. Relator claims that the Ohio Supreme Court in *Hamlin*, by affirming an award of interest to a reinstated county employee, extended the *Crockett* municipal corporation exception to counties. However, the *Hamlin* opinion evidences no consideration of the interest issue. More importantly, in the subsequent case of *Beifuss v. Westerville Bd. of Edn.* (1988), 37 Ohio St.3d 187, 525 N.E.2d 20, the Ohio Supreme Court noted as follows at 189, 525 N.E.2d at 22, in holding that a public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment:

"Appellants initially contend that interest should be assessed against a public school board just as it is assessed against a municipal corporation. We disagree. Although a public school board is not *per se* a state agency controlled by the State Personnel Board of Review, it has long been recognized as quite different from a municipal corporation."

In the instant case, the termination proceedings regarding relator, a county employee, *were* controlled by the appellate process of the State Personnel Board of Review, rather than a municipal civil service commission. Cf. *Prudoff v. Lorain Civ. Serv. Comm.* (1986), 33 Ohio App.3d 97, 514 N.E.2d 892. A county sheriff's department is effectively a "state agency" for

purposes of R.C. 126.12 and no interest is due reinstated deputy sheriffs on their back compensation. *State ex rel. Koski v. Johnston* (June 17, 1988), Ashtabula App. No. 1296, unreported, 1988 WL 64772. Consequently, relator's motion for partial summary judgment with respect to interest is overruled.

 Relator's final claim is related to attorney fees. The "American Rule" regarding recovery of attorney fees by the prevailing party in a civil action generally requires statutory authorization for awarding attorney fees in the context of mandamus actions. *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 21, 558 N.E.2d 49, 54. An exception to this general rule occurs when it is found that the party against whom the fees are taxed was found to have acted in bad faith. *State ex rel. Durkin v. Ungaro* (1988), 39 Ohio St.3d 191, 193, 529 N.E.2d 1268, 1270. An action is defended in bad faith when litigation is continued that is obdurate, vexatious, wanton, or engaged in for oppressive reasons. *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. In the case at bar, since relator is not entitled to interest on his back compensation, *i.e.*, is unsuccessful on part of his claims, there is a genuine issue of material fact as to whether this mandamus action has been defended in bad faith. *Caspar, supra,* 53 Ohio St.3d at 20–21, 558 N.E.2d at 53–54; *State ex rel. Esselburne v. Maurer* (May 28, 1991), Franklin App. No. 89AP–953, unreported, 1991 WL 94443. We further note that respondents did raise an appropriate defense, *i.e.*, lack of due diligence, but ultimately failed to introduce sufficient supportive evidence. This is not necessarily tantamount to either vexatious conduct or bad faith on the part of respondents. Accordingly, relator's claim for attorney fees is not susceptible to resolution by summary judgment at this point in the proceedings.

In conclusion, relator is entitled to summary judgment on the following portion of his original action:

"1. Writ compelling respondents to reinstate relator to his former position of 'Lieutenant—Civil Division' and the duties and responsibilities associated with that position."

Additionally, relator is granted partial summary judgment on his claim for compensation of $22,212.43, but a writ of mandamus must await the resolution of the total amount of recoverable compensation.

Moreover, although respondents did not move for summary judgment on the issue of relator's claim for interest, an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the nonmoving party is entitled to judgment as a matter of law. *Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp.* (1986), 27 Ohio St.3d 25, 28,

27 OBR 442, 444, 500 N.E.2d 1370, 1372–1373. Therefore, we enter summary judgment in respondents' favor on the issue of prejudgment interest.

The remaining issues, including overtime compensation, bad faith necessary to allow for the recovery of attorney fees, and attendant issues concerning PERS contributions by respondents due for the period of wrongful exclusion, are referred for further proceedings on these issues to Leonard Berkley, Portsmouth, Ohio, staff attorney of this court. As noted, relator has established the right to at least $22,212.43 in compensation at this juncture. The referee shall have all the powers set forth in Civ.R. 53 and Loc.App.R. 3. The issues resolved by this entry shall not be rendered final and appealable prior to resolution of all claims raised by relator. Based upon the foregoing, relator's motion for partial summary judgment is granted in part and overruled in part.

*Judgment granted in part and overruled in part.*

STEPHENSON, P.J., HARSHA and PETER B. ABELE, JJ., concur.