DECISION AND JUDGMENT ENTRY
This is an original mandamus action brought by Cathy Cottrill-Craig, Relator, against the Ross County General Health District, Respondent. Relator claims that respondent has failed to pay her the back pay to which she was found to be entitled by the State Personnel Board of Review. In her September 1999 complaint, relator prayed for relief as follows: "Wherefore, Relator prays for a Writ of Mandamus compelling Respondents to provide Relator with the full back pay and emoluments due her, along with her attorney fees and her costs herein, and for such further relief as may be proper."
Respondent filed its answer and eventually filed a Submission of Evidence, which largely consisted of advertisements from newspapers seeking nurses to fill available positions.
The parties have entered into the following joint stipulation that was filed with this Court:
 1. On or about July 7, 1998, Relator was discharged from her classified civil service position as a Home Health Care Nurse (R.N.) with the Ross County Health Department.
2. The stated reasons for that discharge were:
 "Falsifying testimony when incidents are being investigated," and
 "Making false claims or misrepresentation in an attempt to obtain a department benefit."
 3. The Relator appealed that termination to the State Personnel Board of Review, where, on April 30, 1999, the termination was reversed by an administrative law judge who ordered that Relator's removal be disaffirmed and that she be reinstated to her former position with all back pay and emoluments due her.
 4. Objections to that decision were overruled, and a final entry was issued by the State Personnel Board of Review on or about May 27, 1999.
 5. The decision of the State Personnel Board of Review specifically held that Relator's back pay was subject to "any monetary offset between July 7, 1998, and the date of reinstatement."
 6. On or about June 4, 1999, the Respondent contacted Relator and directed her to return to work at her prior rate of pay, $14.53 per hour, effective June 14, 1999.
 7. On or about June 29, 1999, Respondent sought a hearing before the State Personnel Board of Review for the purpose of calculating the amount of back pay that was owed to Relator based upon the Board's decision as to "offset."
 8. Relator, through counsel, objected to such hearing, and the Board denied Respondent's motion on the grounds of lack of jurisdiction over the issue of back pay recalculation.
 9. While separated from employment, the Relator filed a claim for unemployment benefits. When that claim was denied, the Relator appealed to the Unemployment Compensation Review Commission, however, neither party appeared at the scheduled hearing, and Relator's appeal was dismissed.
 Relator's claim for unemployment benefits was valued at $6,942.00.
 10. By letter dated July 14, 1999, counsel for Relator submitted to counsel for Respondent, a list of twelve (12) places at which Relator had either submitted a resumé [sic], or had actually been interviewed. Relator, in that same letter, represented that there had been "other places" which she had telephoned, but where the employer would not accept an application for employment.
 11. On or about February 5, 2000, Relator executed an affidavit in which she identified approximately 44 places at which she had made some kind of contact relative to potential employment. This affidavit identified approximately five (5) locations at which Relator had been interviewed, and approximately nine (9) locations at which Relator had submitted resumés [sic]. The remainder of the locations were identified by Relator as places that she had "called." This latter group of "calls" had been reconstructed after the fact by Relator from annotations made by Relator in a set of "Yellow Pages."
 12. At all times relevant, there were vacancies for Registered Nurses in the Chillicothe/Ross County area, or within a reasonable commuting distance thereof, that would have paid wages comparable to Relator's rate of pay.
 13. During the 49 week period during which Relator was excluded from employment she would have earned $28,246.32, with PERS [Public Employees Retirement System] and insurance payments made on her behalf of $4,127.38 ($32,373.70 total value).
 14. Respondent denies that it owes the full amount, due to various theories of "offset."
 15. Relator no longer seeks 113.19 hours of sick leave, 75.46 hours of vacation, and 24 hours of personal leave.
 16. Relator seeks back pay and benefits in the full amount of $32,373.70.
 The parties also filed their respective briefs before this Court.
Two issues are presented to this Court for its determination: (1) whether relator has established with certainty the amount of compensation to which she is entitled; and (2) whether respondent has established an amount by which it is entitled to reduce relator's back pay.
I. Mandamus
 A writ of mandamus is an extraordinary legal remedy granted only in those cases where relief cannot otherwise be obtained. Columbus S. Power Co. v. Ohio Dept. of Transp. (1989), 63 Ohio App.3d 612, 619, 579 N.E.2d 735, 740. In order for a writ of mandamus to issue, relator must establish that he has a clear legal right to the relief prayed for, that respondents are under a clear legal duty to perform the acts, and that relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Dublin v. Delaware Cty. Bd. of Commrs. (1991), 62 Ohio St.3d 55, 60, 577 N.E.2d 1088, 1093; State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow
(1991), 62 Ohio St.3d 111, 113, 579 N.E.2d 705, 707; State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28, 29, 451 N.E.2d 225, 226; certiorari denied (1983), 464 U.S. 1017, 104 S.Ct. 548 .
State ex rel. Butterbaugh v. Ross Cty. Bd. of Commrs. (1992),79 Ohio App.3d 826, 832, 608 N.E.2d 778, 782. Furthermore, "A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employment, provided the amount recoverable is established with certainty." Id., citing State exrel. Martin v. Bexley Bd. of Edn. (1988), 39 Ohio St.3d 36, 37,528 N.E.2d 1250, 1251; Monaghan v. Richley (1972), 32 Ohio St.2d 190,291 N.E.2d 462, syllabus.
However, "[t]his compensation is subject to reduction by the amount the employee earned or, in the exercise of due diligence, could have earned
in appropriate employment during the period of exclusion." (Emphasis added.) Butterbaugh v. Ross Cty. Bd. of Commrs., 79 Ohio App.3d at 832,608 N.E.2d at 782.
A. Certainty of Back Pay Sought
In the case sub judice, the parties have stipulated that the amount relator would have received in financial compensation is $32,373.70. This amount is the sum of $28,246.32 (the amount relator would have been paid during the time she was wrongfully terminated) and $4,127.38 (the amount of contributions to the Public Employees Retirement System (PERS) and insurance payments that respondent would have made on her behalf).
The sum sought seems to be quite accurate and certain. Relator missed two hundred forty-three days of work due to her wrongful termination. Based on an eight-hour workday, that translates to 1,944 hours of missed employment, which at $14.53 per hour amounts to exactly $28,246.32. When combined with the stipulated $4,127.38 of PERS and insurance contributions, the grand total equals $32,373.70.
We note, however, that under R.C. 145.47, respondent and relator would both be required to make contributions to PERS. In other words, had relator not been dismissed from her employment with respondent, she would have been required to contribute a percentage of her gross earnings to PERS. In addition, respondent would have been required to make a contribution to PERS on relator's behalf, again, consisting of a percentage of relator's gross earnings. See R.C. 147.45; State ex rel.Davis v. Hocking Cty. Commrs. (Dec. 22, 1995), Hocking App. No. 94CA19, unreported.
Relator would then be permitted to receive her contributions to PERS after separating from public employment. See id. Relator, would become entitled to receive respondent's contributions to PERS, made on her behalf, only by meeting the PERS eligibility requirements. See R.C. 145.32
to 145.462 (dealing with payment of PERS benefits for retired and disabled public employees). Relator would not receive a benefit from respondent's PERS contributions if she quit her public employment without satisfying the PERS benefits eligibility requirements. See State ex rel.Davis v. Hocking Cty. Commrs., supra.
1. Respondent's Contributions to PERS on Relator's Behalf
In compliance with the Revised Code provisions pertaining to PERS, this Court has previously noted that a wrongfully terminated employee is not entitled to directly receive those contributions to PERS that the employer would have made had the employee not been dismissed. See Davisv. Hocking Cty. Commrs., supra. The wrongfully terminated employee, however, is entitled to have the employer make the contributions to PERS on his or her behalf. See id.
Respondent's rate of contribution to PERS on relator's behalf is 13.55 percent of her earnable salary, $28,246.32, which in this case equals $3,827.38. See id.; R.C. 145.47; Ohio Adm. Code 145-3-02. So, $3,827.38 of the $4,127.38 claimed by relator should be paid to PERS on her behalf, as it would have been had she not been dismissed.
2. Relator's Contributions to PERS
Likewise, had relator not been dismissed, a portion of her pay would have been withheld by respondent and contributed to PERS. See id. Relator's rate of contribution to PERS is 8.5 percent of her earnable salary, $28,246.32, which equals $2,400.94. See id. Thus, $2,400.94 of relator's back pay should be withheld by respondent and paid to PERS as relator's contribution, as would have been the case had she not been dismissed.
3. Respondent's Insurance Payments on Relator's Behalf
The remaining portion of the $4,127.38 claimed by relator, $300, is presumably the amount that respondent would have paid on relator's behalf for insurance. In order to determine relator's entitlement to this amount, we must refer to the quality of the proof and the duty of the employee to demonstrate that she had a clear legal right to relief in this regard. See State ex rel. Woods v. Clermont Cty. Bd. of MentalRetardation (June 30, 1986), Clermont App. No. CA83-10-084, unreported. Once again, this amount is not something that relator would have been paid directly. Furthermore, the record is devoid of any evidence showing that relator paid additional monies of her own to procure insurance during the exclusion from her employment with respondent. Thus, we find that the amount attributed to insurance payments on relator's behalf is uncertain for purposes of mandamus.
B. Respondent's Off-Set Amount
The parties' true dispute in this case, however, revolves around the off-set issue, to wit: the amount, if any, by which respondent is entitled to reduce relator's back pay.
On this issue, respondent clearly bears the burden of proof. "The principle of mitigation of damages applicable in a suit to recover compensation for a period of wrongful exclusion from employment is an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." Butterbaugh v. RossCty. Bd. of Commrs., 79 Ohio App.3d at 833, 608 N.E.2d at 783, citingState ex rel. Hamlin v. Collins (1984), 9 Ohio St.3d 117, 119,459 N.E.2d 520, 523; State ex rel. Martin v. Columbus (1979), 58 Ohio St.2d 261,389 N.E.2d 1123, paragraph three of the syllabus; see, also, State ex rel.Martin v. Bexley Bd. of Edn., 39 Ohio St.3d 36, 528 N.E.2d 1250, syllabus (stating that the "employer bears the burden of establishing with reasonable certainty the amount the wrongfully excluded employee could have earned in appropriate employment during the period of exclusion").
Respondent asserts that it is entitled to reduce relator's back pay based on two theories. First, respondent argues that relator could have found suitable employment had she exercised due diligence in seeking such employment. Second, respondent argues that it should be permitted to reduce relator's back pay by the amount of unemployment compensation she would have received had she pursued an appeal of her initial denial of unemployment benefits. Each of these arguments will be addressed.
1. Relator's Due Diligence
Respondent argues that relator failed to exercise due diligence when seeking suitable alternate employment following her dismissal from respondent's employ. Accordingly, respondent concludes that it does not owe relator the full amount of back pay.
As we have already noted, relator's back pay is subject to reduction by the amount she earned in appropriate employment during the period of exclusion. See Butterbaugh, supra. In addition, that compensation is also subject to reduction by the amount relator could have earned, had she exercised due diligence in seeking similar employment. See id.
Accordingly, the issue we must address is whether relator exercised due diligence when seeking employment during her unlawful exclusion from work.
"Due diligence is a relative term, and can only be properly evaluated by looking at the situation of relator. * * * Due diligence must be considered in light of employment opportunities." State ex rel. Martinv. Columbus (1979), 58 Ohio St.2d 261, 266-267, 389 N.E.2d 1123, 1126, quoting State ex rel. Martin v. Columbus (June 20, 1978), Franklin App. No. 77AP-860, unreported (McCormac, J., dissenting). Relator "must use ordinary care to obtain similar employment and the employee's exercise of due diligence should be considered in light of available employment opportunities." Aldahan v. Tansky Sales, Inc. (June 20, 2000), Franklin App. No. 99AP-651, unreported.
Additionally, a wrongfully terminated employee "may not be required to seek elsewhere, or to engage in a different industry. But he is bound to use ordinary effort to obtain similar employment in the same vicinity; at least if such employment is offered he is bound to take advantage of it."Id., quoting James v. Allen Cty. (1886), 44 Ohio St. 226, 233-234,6 N.E. 246, 250; see, also, Crotzer v. Rolling Hills Local Bd. of Edn. (Jan. 2, 1997), Guernsey App. No. 96CA28, unreported.
The parties have stipulated that nursing positions were available in the area where relator had been working. The parties have also stipulated that the compensation that those available positions offered was comparable to the compensation relator had received from respondent. In addition to those stipulations, respondent has filed copies of a vast number of local "help-wanted" classified advertisements, seeking registered nurses. Some of those advertisements refer to wages higher than those relator was earning before her wrongful termination.
In addition, relator has identified approximately forty-four places where she made some attempt to seek employment during the time of her exclusion. Of those forty-four contacts, relator received five interviews and submitted résumés to nine other potential employers. Relator also states that on her applications for employment she had to disclose her termination by respondent and the grounds for that termination (i.e., stealing and lying). According to relator, that disclosure had a deleterious affect on her employment search.
Respondent argues that during the nearly forty-nine weeks she was not at work, relator could have submitted far more applications and résumés than the twelve to fourteen that she did. Accordingly, respondent concludes that relator's claim should be denied in its entirety, or in the alternative that relator should receive no more than "14/49ths" of $32,373.70.
We refuse to accept this second conclusion because it would require this Court to reduce the issue of due diligence to a mathematical equation (i.e., one application per week equals due diligence). See Stateex rel. Martin v. Columbus, supra.
We agree with respondent that during her exclusion from work, relator could have submitted more résumés or applications. However, relator did put forth effort to seek alternate similar employment; she made approximately forty-four contacts in relation to her employment search. Some of those contacts led to the submission of applications and résumés, while others did not. Additionally, some potential employers would not interview or accept an application from relator once she disclosed the grounds for her termination from her employment with respondent.
Also, during the time of her exclusion from work, relator was engaged in her action before the State Personnel Board of Review, seeking her reinstatement to her position with respondent, thereby taking time from her employment search. See Marshall v. City of Columbus (1980),61 Ohio St.2d 353, 402 N.E.2d 509.
Thus, we find that under the circumstances presented, relator exercised the required degree of ordinary care in seeking similar employment. Accordingly, we find that respondent has not met its burden of proof of showing that relator did not put forth "ordinary care to obtain similar employment." Martin, supra. Neither did respondent establish "with reasonable certainty[,] the amount [relator] could have earned in appropriate employment during the period of exclusion." Id. at syllabus.
2. Relator's Unemployment Compensation Claim
Also, respondent claims that it is entitled to reduce the compensation due to relator by the amount of unemployment compensation she would have
received had she pursued her administrative appeal after first being denied unemployment benefits.
Controlling caselaw from the Supreme Court of Ohio states that, "Since the state cannot be required to pay twice, State ex rel. Crockett
v. Robinson (1981), 67 Ohio St.2d 363, at 368, [ 423 N.E.2d 1099, 1103] relators' back pay award is to be reduced by the amount received in unemployment benefits." State ex rel. Guerrero v. Ferguson (1981),68 Ohio St.2d 6, 7, 427 N.E.2d 515, 516.
In the case sub judice, it is stipulated that relator did not receive any unemployment compensation. The fact that she did not pursue, or that she abandoned, an appeal of her denial of unemployment benefits is irrelevant. Refusing to allow respondent to off-set this amount does not force respondent into the position of making double payment. Accordingly we reject respondent's argument that it should be permitted to reduce the compensation due relator by unrealized unemployment compensation.
C. Attorney Fees
Finally, we address relator's claim for reasonable attorney fees.
 The "American Rule" generally requires statutory authorization for recovery of attorney fees. State ex rel. Caspar v. Dayton (1990), 53 Ohio St.3d 16, 21, [558] N.E.2d 49. An exception to this general rule occurs when the party against whom the fees are sought to be taxed is found to have acted in bad faith. State ex rel. Durkin v. Ungaro (1988), 39 Ohio St.3d 191, 193, 529 N.E.2d 1268. An action is defended in bad faith when a party continues litigation which is obdurate, vexatious, wanton or engaged in for oppressive reasons. Sorin v. Bd. of Edn. (1976), 46 Ohio St.2d 177, 347 N.E.2d 527.
State ex rel. Davis v. Hocking Cty. Commrs., supra.
In the current case, there is no statute authorizing attorney fees. Additionally, no argument or evidence has been put forth in an attempt to show that respondent has acted in bad faith. Accordingly we deny relator's claim for attorney fees.
II. Conclusion
In conclusion, we have established "with certainty," that relator is entitled to receive $25,845.38 from respondent in the following fashion:
 $28,246.32 Amount relator would have earned during the period in which she was wrongfully terminated
 -$2,400.94 PERS contribution that would have been deducted from her pay $25,845.38
Additionally, relator is entitled to have respondent make two payments to PERS: (1) the $2,400.94 PERS contribution that would have been deducted from her salary and (2) the $3,827.38 PERS employer contribution which respondent would have made on her behalf during the time she was excluded from work. Finally, respondent is not entitled to off-set relator's back pay by any amount, and relator's claim for attorney fees is denied.
Accordingly, a writ of mandamus is hereby granted to relator ordering respondent to compensate her as outlined above.
WRIT GRANTED. Statutory costs herein taxed to the respondent.
Abele, P.J., and Kline, J.: Concur in Judgment and Opinion.