[Cite as *State ex rel. Stultz v. Columbus City School Dist. Bd. of Edn.*, 2019-Ohio-599.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Steven L. Stultz, | : | |
| Relator, | : | |
| v. | : | No. 17AP-656 |
| Columbus City School District Board of Education, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on February 19, 2019

**On brief:** *Matthew M. Banal,* for relator.

**On brief:** *Wanda T. Lillis,* for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1}   Relator, Steven L. Stultz, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Columbus City School District Board of Education, to provide him back pay pursuant to the April 3, 2017 decision of the Columbus Civil Service Commission that modified Stultz's October 20, 2015 discharge to a 30-day suspension without pay.

{¶ 2}   This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  On June 18, 2018, the magistrate issued a decision including findings of fact and conclusions of law.  The magistrate's

decision, which is appended hereto, recommends this court deny Stultz's request for a writ of mandamus.

**{¶ 3}**   Stultz has filed an objection to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."   Civ.R. 53(D)(4)(d). Stultz does not challenge the magistrate's recitation of the pertinent facts; however, he objects to the magistrate's conclusion that respondent has met its burden of proof related to the affirmative defense of mitigation of damages.

**{¶ 4}**   As the magistrate noted, a reinstated public employee may maintain a mandamus action to recover back pay " 'provided the amount recoverable is established with certainty.' " *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, ¶ 28, quoting *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.*, 39 Ohio St.3d 36, 37 (1988).  "The term 'with certainty' generally refers to 'whether a particular amount has been precisely determined as to its value in dollars and cents.' " *Stacy* at ¶ 28, quoting *State ex rel. Hamlin v. Collins*, 9 Ohio St.3d 117, 120 (1984).

**{¶ 5}**   Here, the record does not support a finding that there has been a precise determination of a particular dollar amount of back pay respondent owes to Stultz.  Instead, the record indicates lack of consensus on the dates Stultz is entitled to back pay.  "When the underlying material facts are in dispute, the appropriate remedy for a public employee is not mandamus, but a declaratory judgment to establish the amount owed."  *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, ¶ 26, citing *State ex rel. Bossa v. Giles*, 64 Ohio St.2d 273, 276 (1980). Thus, the amount recoverable has not been established "with certainty," and as a result, Stultz's request for a writ of mandamus must fail.  *Stacy* at ¶ 28.

**{¶ 6}**   In analyzing Stultz's objection to the magistrate's decision, Stultz has misconstrued the magistrate's decision as confirming Stultz is definitively entitled to back pay from the period of October 20, 2015 through April 7, 2017.  Stultz then relies on this flawed premise to object to the magistrate's application of the affirmative defense of mitigation of damages.  We clarify here that because the amount owed to Stultz has not been established "with certainty" his action in mandamus fails solely on that basis.  Until there is an amount recoverable established with certainty, the issue of mitigation of

damages has no application.  Thus, we agree with the magistrate that Stultz's requested writ of mandamus be denied, but for more limited reasons than the magistrate expressed in his decision.  Accordingly, we reject Stultz's challenge to the magistrate's decision.

{¶ 7}   Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined Stultz is not entitled to the requested writ of mandamus.  Accordingly, we adopt the magistrate's factual findings, and, as outlined above, we adopt the magistrate's conclusions of law as modified.  Therefore, we overrule Stultz's objection to the magistrate's decision and deny his request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

DORRIAN and BRUNNER, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Steven L. Stultz, | : | |
| Relator, | : | |
| v. | : | No. 17AP-656 |
| Columbus City School District Board of Education, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 18, 2018

*Matthew M. Banal,* for relator.

*Wanda T. Lillis,* for respondent.

IN MANDAMUS

{¶ 8}   In this original action, relator, Steven L. Stultz, requests a writ of mandamus ordering respondent, Columbus City School District Board of Education, to render to him back pay pursuant to the April 3, 2017 decision of the Columbus Civil Service Commission that modified respondent's October 20, 2015 discharge to a 30-day suspension without pay.

Findings of Fact:

{¶ 9}   1.   On September 4, 2013, respondent hired relator to the position of food service helper.  This part-time position required the employee to work three hours per day while school was in session.  According to respondent's screenshot of relator's employment,

relator was required to work 193 days per school year for a total of 579 hours during the school year.

{¶ 10} 2. Two school years are at issue here. Respondent's school calendar for the 2015-2016 school year begins for students on August 26, 2015 and ends June 2, 2016. Respondent's school calendar for the 2016-2017 school year begins for students on August 24, 2016 and ends June 1, 2017.

{¶ 11} 3. As a regular part-time employee, relator was subject to a collective bargaining agreement. Pertinent here is Article 15.3(C) of the agreement which provides in part:

> Employees who have been out of work on account of illness for fifteen (15) consecutive workdays or longer, must have the approval of the Superintendent before returning to work. Such approval shall be secured through the School Physician after he/she has received a confidential report from the personal physician of the absent employee, indicating the nature of the illness and the condition of the employee.

{¶ 12} 4. On September 23, 2015, attending physician, Robert L. Aurand, M.D., completed a form provided by the U.S. Department of Labor. The four-page form is captioned "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." Apparently, Dr. Aurand practices at a Veteran's Administration Clinic located in Columbus, Ohio.

{¶ 13} Page two of the FMLA form is captioned "Part A: Medical Facts." Thereunder, Dr. Aurand indicates that relator's medical condition is "chronic."

> At paragraph three of the form, the attending physician is instructed:

> If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

{¶ 14} Thereunder, the following query is posed: "Is the employee unable to perform any of his/her job functions due to the condition."

> In response, Dr. Aurand marked the "No" box.

{¶ 15} At paragraph four of the form, the attending physician is instructed: "Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave."

{¶ 16} In response to the above instruction, in the space provided, Dr. Aurand wrote:

> Vet with chronic low back pain, bilateral hip pain and left foot pain. Vet has been taking ibuprofen and gabapentin without much success. Vet reports feeling weakness and instability. Vet also reports having difficulty standing on his job. Chest x-ray ordered and gabapentin increased to 900mg 3 times daily at the 9-17-15 visit with Dr. Aurand. Vet declined physical therapy services on 6-16-15 after meeting with VA PT staff.

{¶ 17} Page three of the FMLA form is captioned "Part B: Amount of Leave Needed." Thereunder, at paragraph seven, the form poses the following query:

> Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?

{¶ 18} In response to the above query, Dr. Aurand marked the "Yes" box.

Also, at paragraph seven, the form poses another query: "Is it medically necessary for the employee to be absent from work during the flare-ups?"

> In response to the above query, Dr. Aurand marked the "Yes" box.

{¶ 19} In the space provided, Dr. Aurand wrote: "Vet may be unable to work during a flare-up of his chronic medical condition due to pain."

Also at paragraph seven, the form poses yet another query:

> Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days).

{¶ 20} In response to the above query, Dr. Aurand listed a frequency of "1-2" times per month and a duration of "1-2" days per episode.

{¶ 21} 5.  On October 20, 2015, relator appeared at a hearing before respondent. Thereafter, relator was informed by letter that he is discharged from his employment effective October 20, 2015.  The letter explains:

> This is to notify you that after the hearings held on the dates below you have been found guilty of the following charge and specification:
>
> Date: 10/20/15
>
> Charge: Neglect of Duty; Nonfeasance; Misfeasance; Job Abandonment; AWOL
>
> Specification: In that Mr. Stultz has demonstrated noncompliant conduct to include but not limited to: 1) Not reported to Columbus City School District Food Service Department for work as a Food Service Helper SY 15-16; 2) Failed to appear (no call/no show) at a 9/14/15 hearing to address absenteeism which occurred in May 2015; 3) Failed to respond to a letter dated August 27, 2015 regarding his failure to return to work for SY 15-16; 4) Has demonstrated Absence Without Leave (AWOL) from a period of August 24, 2015 through September 21, 2015 (20 consecutive work dates).
>
> Determination: It was determined that the charges of Neglect of Duty; Nonfeasance; Misfeasance; Job Abandonment and AWOL in that Mr. Stultz has neglected to report for work are **Substantiated**.
>
> You are hereby discharged from your position with the Columbus City Schools effective October 20, 2015.
>
> In accordance with Section 149-1 of the City Charter, you may appeal this order to the Civil Service Commission within ten (10) calendar days from this date.

(Emphasis sic.)

{¶ 22} 6.   Relator administratively appealed respondent's October 20, 2015 discharge decision.

{¶ 23} 7.  Over one year later, on December 7, 2016, relator's appeal was heard by a three-member trial board of the Columbus Civil Service Commission.  Following the

hearing, the trial board issued an eight-page written decision that was adopted by the Columbus Civil Service Commission at a public meeting on April 3, 2017.

{¶ 24} On the first page of the trial board's written decision, the "charges" and "specifications" are identified:

> CHARGES: Neglect of Duty; Nonfeasance; Misfeasance; Job Abandonment; AWOL
>
> SPECIFICATIONS: In that Mr. Stultz has demonstrated noncompliant conduct to include but not limited to: 1) Not reported to Columbus City School District Food Service Department for work as a Food Service Helper SY 15-16; 2) Failed to appear (no call/no show) at a 9/14/15 hearing to address absenteeism which occurred in May 2015; 3) Failed to respond to a letter dated August 27, 2015 regarding his failure to return to work for SY 15-16; 4) Has demonstrated Absence Without Leave (AWOL) from a period of August 24, 2015 through September 21, 2015 (20 consecutive work dates).

{¶ 25} According to the trial board's written decision, Brenda Klein testified at the December 7, 2016 hearing. Brenda Klein is a food service supervisor at Columbus City Schools and had been employed by the school district for approximately five years.

{¶ 26} According to the trial board's decision:

> She said that Mr. Stultz had been with the School District since 2013 and that he worked three hours per day. She testified that three-hour employees do not qualify for FMLA leave because they do not accumulate enough hours to meet the requirements.
>
> Ms. Klein testified that she met with Mr. Stultz in September 2013 to review the handbook, Kronos timekeeping, and attendance. She does not typically meet individually with each employee. She identified Board Exhibit B as excerpts from the Food Service Employee Handbook and identified pages 18-20 as the checklist for the training of new employees. She testified that she covered all of the issues listed there and even provided her business card with her phone number. She said that employees calling off must contact a supervisor at least an hour in advance, or they may contact Roxane Reed in the office.

Ms. Klein stated that Mr. Stultz requested to be accommodated on the job. She said that no other employees receive accommodations because the job is physical and injured employees cannot return to work without a doctor's approval. She said that Mr. Stultz has been disciplined in the past. She went over his attendance record and identified Board Exhibit B, pages 10-16, as a Kronos report on his attendance for the school year 2013-2014. She testified that she had a verbal conference with Mr. Stultz on March 3, 2014 when he missed seven days, since discipline can occur after nine days. She said that pages 13-14 indicated he was in a leave without pay status and that he stated he was going to quit. Ms. Klein said she asked for a letter from him, but did not hear from him until the next school year. He was out for the remainder of May and did not call in after that.

Ms. Klein stated that Mr. Stultz reported to work the next school year in August 2014 and he had a disciplinary conference in September 2014, and he was given a three-day suspension. She went over the rest of the report and said that he had missed 17 days in the 2014-2015 school year. Ms. Klein identified page 23 of Board Exhibit B as documentation from Barbara Wolz, Food Service Manager, who called Mr. Stultz in August 2015 wherein she asked if he would be returning to work. He returned her call and stated that he would not be returning to work. He did not show up again for that school year and Ms. Klein indicated that they cannot replace an employee until that employee resigns or is terminated. Therefore, they had to get substitutes to fill in for him.

Ms. Klein said that employees are questioned during their interviews regarding lifting and that employees are required to be able to life 40 pounds. She repeated that employees with physical restrictions cannot be accommodated at all. She said it is at the manager's discretion to put someone on the register, but that is usually due to a special situation and is not a daily occurrence. She testified that all employees help unload the food trucks.

{¶ 27} According to the trial board's decision, Adriane Thomas testified. She is a personnel assistant with Columbus City Schools and has been employed by the school district since 2002.

{¶ 28} According to the trial board's decision:

She testified that she processes leaves of absence, injury leave, and workers compensation for classified employees. Ms. Thomas said that employees who apply for leave need to obtain a packet of forms to complete and return. She stated that the contract requires an application for a leave of absence for 15 days or more.

Ms. Thomas identified Board Exhibit F as a Regular Leave of Absence packet which includes instructions and forms to complete. She testified that she did not recall talking to Mr. Stultz; however, she explained that anyone in the office could have given him the packet. She also testified that she did not recall receiving completed forms from Mr. Stultz and she could not say for sure that he did not turn them in. When employees turn in a completed packet, the forms are scanned and tracked. Ms. Thomas stated that Mr. Stultz was not granted a leave of absence because he would have been sent a letter. She said that her office does not process requests for accommodation.
* * *

In response to questions from Commissioner Pettigrew, Ms. Thomas stated that she creates a file when completed leave of absence forms are submitted and that she did not have a file for Mr. Stultz. She also said that she keeps a holding file for incomplete forms. During the hearing on October 20, 2015 with Dr. McAfee, this issue was addressed. She testified that she checked her office and also went to the warehouse to check for paperwork for Mr. Stultz. She said she recalled a discussion during the hearing about medical documentation, but that Mr. Stultz was not in the system and had not been approved for a leave of absence.

{¶ 29} According to the trial board's decision, Jerry McAfee testified. McAfee is a hearing officer in the employee relations department with Columbus City Schools, and he was interim director for the period of time during the 2014-2015 school year.

{¶ 30} According to the trial board's decision:

Dr. McAfee identified Board Exhibit B pages 25-27 as a letter sent to Mr. Stultz in August 2015. He said the letter was sent because there was an issue with the previous school year where Mr. Stultz did not show up for work and told a supervisor he was quitting. Food Services tried to get a commitment from him and he subsequently appeared at Human Resources and explained that he was not resigning.

Mr. Stultz called again telling a supervisor that he was going to quit, so a hearing was set up for the May 2015 AWOL's. Mr. Stultz did not appear for the hearing and said he did not receive the hearing notice. Dr. McAfee said a second hearing notice was sent and Mr. Stultz again did not show up. Dr. McAfee again referred to the letter he sent (Board Exhibit B, pages 25-27) to Mr. Stultz in August 2015 directing him on what he needed to do. Mr. Stultz was given five options and did not follow through on any of them. He said that Mr. Stultz received this letter since he signed for the certified mail receipt on September 2, 2015. Dr. McAfee said a hearing was held on October 20, 2015 and Mr. Stultz attended this hearing. * * *

Dr. McAfee testified that Employee Relations sends notices by certified mail, but he was unsure if Mr. Stultz received the notice for the first hearing. He also stated that Mr. Taylor was the Hearing Officer assigned to the first hearing. Once the second hearing was scheduled, Dr. McAfee said they had the notice hand-delivered to Mr. Stultz in order to ensure that he received it. He stated that his notes reference the discussion with Ms. Thomas regarding medical documentation and that the hearing was recessed in order to request that Ms. Thomas attend so it could be determined if Mr. Stultz submitted any medical documentation or not.

Mr. Banal introduced Union Exhibit 1, a time-stamped copy of a medical form that Mr. Stultz had in his possession. Note: Columbus City Schools did not have this document in their exhibits. Dr. McAfee testified that it is similar to the form in the Leave of Absence packet, although he said it was an older form based on the date at the bottom.

In response to questions from Commissioner Pettigrew, Dr. McAfee stated that he did not know where the "Received" stamp originated from on the bottom of the document. He said the document was not processed through Employee Relations.

{¶ 31} According to the trial board's decision, Lakesha Palmer testified. According to the trial board's decision:

**Lakesha Palmer** is a former Food Service Helper with CCS and stated that she was no longer working there during the 2014-2015 school year. She testified that she last worked at Sherwood Middle School and that the manager there was

Barbara Wolz. Ms. Palmer explained that they worked about three hours per day.

Ms. Palmer described the duties of a Food Service Helper and stated that not everyone participated in the same duties all of the time. She explained that light duty was not supposed to be available; however, some employees were allowed light duty. She stated that there was one employee (Janice) who worked the register the majority of the time due to her issue with being dizzy. Ms. Palmer testified that they rotated duties for two weeks while Janice was on leave and upon her return, she was assigned to the register. Ms. Palmer alluded to the fact that this caused some employees to be disgruntled. Ms. Palmer testified that she was unaware if Mr. Stultz was granted an accommodation.

In response to questions from Commissioner Pettigrew, Ms. Palmer stated that she had worked at CCS for five or six years. She said that while employed at Sherwood, there were only five employees and when one employee did not contribute, it affected the entire group. She also stated that she believed Mr. Stultz was able to do the job because all of the employees assisted each other. Ms. Palmer was not aware of Mr. Stultz's limitations on the job; however, he may have requested better floor mats at the time.

(Emphasis sic.)

{¶ 32} According to the trial board's decision, relator testified. According to the trial board's decision:

**Steven Stultz** testified that he had been employed by CCS in Food Services since 2013. He stated that he served one year with the Air Force and that he also worked for the State of Ohio with the Bureau of Employment Services.

* * *

Mr. Stultz testified that he worked at Easthaven, Eastgate, and Eastmoor before working at Sherwood. He discussed receiving phone calls from a 365 prefix phone number and stated that Ms. Klein handled the situation. He stated that he had some issues with the weight of the milk crates and the freezer. Mr. Stultz stated that he was never a no call, no show employee.

Mr. Stultz said that the first time he called off from work was due to a back issue; however, he only took one day off work. He discussed an issue regarding a leak in the ceiling where five gallon buckets (once full) had to be moved and dumped. He testified that he was injured one other time when Ms. Wolz hit him with the freezer door and knocked him down.

Mr. Stultz said that he started using a cart to move milk crates and explained to his manager about his limitations. He stated that Janice was allowed to continue working. He testified that they had meetings during the 2014 school year where they were told they had to move faster or find something else. He stated that this was not directed at him.

Mr. Stultz testified that Ms. Wolz called him in August 2014 and that they were assisting him in obtaining a job coach/mentoring position. He also reached out to the superintendent in January 2014. He said that he never told anyone he quit during the 2015 school year. Mr. Stultz testified that he spoke with his manager informing her that he would keep her apprised and that he would go to Human Resources when he made his decision. He stated that he chose to request leave without pay after receiving Dr. McAfee's letter.

Mr. Stultz stated that he went to the VA in September 2015 and that he turned in paperwork "downtown," but that it was not Ms. Thomas to whom he gave that paperwork. He said that he turned in the doctor's forms on October 7, 2015 and that Ms. Thomas informed him that he completed the wrong paperwork for intermittent leave versus leave without pay. Mr. Stultz said that Ms. Thomas testified at the disciplinary hearing that he turned in incomplete forms and they were not turned in soon enough.

Mr. Stultz testified that he did not receive the hearing notices. He also testified that he now has a back brace and orthopedic shoes and is physically able to return to work.

Mr. Stultz testified that he was not offered the opportunity to return to work but was told he could resign and apply for other jobs. His testimony was that there were two incidents where he took time off work. He also stated that he did not contact anyone other than his supervisor. Mr. Stultz said he talked to Renee Dews, a Union Steward, who told him he needed to go on leave as directed by his letter. He stated that Dr. McAfee

told him several times he needed to "man up." He testified that he turned in the entire Leave of Absence packet to Human Resources and he also kept a copy. He did not explain the reason he only had four pages of the packet.

Mr. Stultz acknowledged that he met with Ms. Klein in September 2014 to review job duties. He said he had a disciplinary hearing in March 2014 and was suspended for three days. He said he did not apply for a reasonable accommodation at that time because he was told there were no accommodations offered.

Mr. Stultz said that he believed he missed 15 to 17 work days in May 2015 due to his intervention of a fight between two students. However, he said that Ms. Wolz pulled him back from the fight and told him Food Service Employees were not to intervene in these situations. He said he called off on all of those missed days.

In response to questions from Commissioner Pettigrew, Mr. Stultz stated that he did not have an advocate from the VA or any other veterans' organizations, and that the VA told him to try to get a different job.

Commissioner Pettigrew stated that the record would be kept open until December 19, 2016. He requested a copy of the time-stamp used by Human Resources as it appeared in 2015 and also directed counsel for both parties to turn in any other documents regarding Mr. Stultz's leave of absence by that date.

(Emphasis sic.)

{¶ 33} On the seventh page of the trial board's written decision are "Findings and Recommendations." Thereunder, the decision states:

The Trial Board concluded from all the evidence submitted that Steven Stultz took steps to submit his leave of absence paperwork. Meaning, Columbus City Schools gave him written directives in 2015 where they provided him with five options. The Trial Board feels that he attempted to implement one of those options by submitting paperwork to request leave without pay. However, the Trial Board recognizes that he missed an extensive amount of work and that he failed to follow through on procedures for calling off work and requesting leave without pay.

Since he did attempt to follow through with one of the options offered, it is recommended that Mr. Stultz's termination be modified to a suspension for the maximum number of days permitted (not less than thirty [30] days). It is also recommended that Mr. Stultz receive the minimum compensation a part-time employee is entitled to receive. Also, if Mr. Stultz returns to work, he would benefit from being scheduled for long-term training regarding his employment with Columbus City Schools. If Mr. Stultz has additional issues with showing up for work and fails to complete any of the requirements of his position as a Food Service Helper, he may be terminated by the School District.

For the foregoing reasons and based on the evidence presented, the Trial Board finds that Steven Stultz attempted to follow requirements to request a leave of absence. However, the Trial Board recommends that the full Commission modify the discharge of Mr. Stultz to the maximum suspension permitted (not less than thirty [30] days).

{¶ 34} 8.   As earlier noted, on April 3, 2017, the Columbus Civil Service Commission adopted the trial board's decision.

{¶ 35} 9.  On April 5, 2017, attending physician John Zaino, M.D., wrote:

Mr. Stultz is a patient in our care at the Columbus VA with several medical problems affecting his ability to be employable for specific job tasks. We are scheduling him for an updated full functional capacity exam at our facility to be able to provide more exact recommendations as to his employability and work restrictions.

In the meantime, I recommend he perform tasks related to walking, standing, lifting, bending, crouching and sitting "AS TOLERATED."

(Emphasis sic.)

{¶ 36} 10.  On April 7, 2017, Sheryl Stephens, M.D., the school physician for the Columbus City School District Board of Education, sent an e-mail to Adriane L. Thomas regarding relator.  The e-mail states:

Food service worker: has release with restrictions so will not be released to work at this time. I am faxing the release to you.

> I am sending him to you so he can obtain any forms he may
> need for continued absence. He states he will call you later
> today. I am giving him your number. I hope that is ok.

{¶ 37} 11.  On April 18, 2017, Dr. Zaino completed a form provided by the U.S. Department of Labor.  This form completed by Dr. Zaino is the same form completed by Dr. Aurand on September 23, 2015 as earlier described.

{¶ 38} 12.  Under part A of the form, the attending physician is asked:  "Is the employee unable to perform any of his/her job functions due to the condition?"

{¶ 39} In response to the query, Dr. Zaino marked the "No" response.

{¶ 40} The attending physician is further asked:  "If so, identify the job functions the employee is unable to perform."

{¶ 41} In response, in the space provided, Dr. Zaino wrote "those as tolerated."

{¶ 42} At paragraph four under part A of the form, Dr. Zaino responded in the space provided:

> Patient with chronic neck and back pain due to diffuse
> [illegible], he has pending functional capacity exam but
> should return to work and perform tasks as tolerated. Has
> seen the appropriate specialist in the past.

{¶ 43} Under part B of the form, at paragraph five, the form asks the attending physician:

> Will the employee be incapacitated for a single continuous
> period of time due to his/her medical condition, including any
> time for treatment and recovery?

{¶ 44} In response to the above query, Dr. Zaino marked the "Yes" response.

{¶ 45} Thereunder, the attending physician is further asked:  "If so, estimate the beginning and ending dates for the period of incapacity."

{¶ 46} In response, in the space provided, Dr. Zaino wrote: "April [5], 2017-May 25, 2017."

{¶ 47} Under part B of the form, at paragraph seven, the physician is asked:

> Will the condition cause episodic flare-ups periodically
> preventing the employee from performing his/her job
> functions?

{¶ 48} Thereunder, Dr. Zaino marked the "Yes" response.

{¶ 49} Thereunder, Dr. Zaino indicated that the flare-ups will occur at a frequency 1 to 2 times per month and a duration of 1 to 2 days per episode.

{¶ 50} 13.  On April 25, 2017, Dr. Stephens' sent an e-mail to Wanda T. Lillis, counsel for respondent.  The e-mail states:

> Regarding the FMLA form: I believe the doctor is essentially stating he needs leave through May 25, 2017. The doctor states Mr. Stultz can RTW "as tolerated," but I do not believe that is possible given the duties of a food service worker.

{¶ 51} 14.  On July 31, 2017, Dr. Zaino authored "Progress Notes."  In those notes, Dr. Zaino wrote:

> Mr. Stultz is a patient in our care. Recent formal functional capacity examination results in regards to recommendations of activity and frequency of which he is able to perform:
>
> Ambulation – occasionally, and recommend use of ankle braces and community walker
>
> Sitting – 30 minute maximum before position change
>
> Standing continuously – 5 minutes maximum
>
> The following activities were recommended he avoid:
> -squat lift
> -power lift
> -shoulder lift
> -bilateral carry
> -push and pull
>
> Simple grasping – occasionally
> Firm grasping – avoid
> Pinching – occasionally
>
> The patient's physical demand level was identified as sedentary.
>
> The patient reports he works three hour shifts where [he] has to be standing most of the time, and requires him to move or carry crates of milk.

Based on the above factors, I do not recommend he work this job due to his medical conditions. For him to be employable, he would need to be afforded a job within the above functional limitations.

{¶ 52} 15. On August 14, 2017, Dr. Stephens sent an e-mail to Adriane L. Thomas. The e-mail states:

In my medical opinion, Mr. Stultz cannot perform the duties of his position. He agrees. I am sending him to your office without a pink slip. If there is some other management of this that you prefer, please let me know.

{¶ 53} 16. Earlier, on July 21, 2017, prior to the filing of this mandamus action, relator executed an affidavit in which he avers:

[One] I began my employment with the Columbus City School District on or around September 4, 2013.

[Two] During my employment tenure with the Columbus City School District, I worked as a food service Helper with a regular yearly schedule of one hundred ninety-three (193) days per school year.

[Three] The Columbus City School District terminated my employment effective October 20, 2015.

[Four] The Columbus Civil Service Commission, through Appeal No. 15-BA-0014, modified my termination from the Columbus City School District to thereafter thirty (30)-day suspension on April 3, 2017.
[Five] Despite my termination being overturned, the Columbus City School District has not paid any amount in back pay due to me. Representatives from the District have verbally informed my attorney that they are refusing to pay me any back pay. The District has not provided a written explanation for its lack of payment.

[Six] Since my termination, I have not received any unemployment benefits from the Ohio Department of Job and Family Services (ODJFS).

[Seven] Since my separation from the Columbus City School District, I have been unable to find gainful employment despite good faith efforts.

{¶ 54} 17. Pursuant to an order of the magistrate setting forth a schedule for the filing of evidence and briefs, respondent filed its brief on January 23, 2018. Appended to its brief is the affidavit of Sheryl Stephens, M.D., which was executed January 22, 2018. In her seven paragraph affidavit, Dr. Stephens reviews the medical documents that are described in the findings of fact in the magistrate's decision. Dr. Stephens' affidavit avers:

> [One] I am employed as the Columbus City School District Board of Education's School Physician. I have been employed in this position for approximately 25 years.
>
> [Two] As School Physician, my duties include evaluating employees before they are permitted to return to work after a medical leave of absence. That evaluation may include, but not be limited to a physical examination of the employee, reviewing medical records provided by the employee's health care provider, and consultation with the employee's health care provider.
>
> [Three] In the course of my duties, I evaluated Steven L. Stultz regarding his ability to return to work as a Food Service Helper after an extended absence.
>
> [Four] On April 7, 2017, I sent the attached email to Adrianne [sic] Thomas, Columbus City Schools' Human Resources Personnel Assistant to address Stultz's possible return to work. * * * I stated in that email that due to the restrictions from Stultz's personal physician, as indicated in the attached letter from his physician dated April 5, 2017, Stultz would not be released to return to work. * * *
>
> [Five] On April 25, 2017, I reviewed the additional medical documentation from Stultz's personal physician. The documentation stated that Stultz could not return to work until at least May 25, 2017. * * * I conveyed that information in the attached email. * * *
>
> [Six] I reviewed the attached Progress Notes from Stultz's personal physician dated July 31, 2017. * * * Based upon that information, in my medical opinion, Stultz cannot perform the duties of a Food Service Helper and I stated that opinion in an email dated August 14, 2017. * * *
>
> [Seven] I have reviewed that attached "Medical Documentation for Employee" dated September 23, 2015

from Stultz's health care provider * * *. Neither Stultz nor any District employee previously provided this document to me for review to determine if Stultz was physically able to return to work in September 2015.

Conclusions of Law:

**{¶ 55}** It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### Basic Law

**{¶ 56}** In *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.,* 105 Ohio St.3d 476, 2005-Ohio-2974, ¶ 28, the Supreme Court of Ohio had occasion to succinctly summarize law pertinent here:

> "A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employment, 'provided the amount recoverable is established with certainty.' " *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.* (1988), 39 Ohio St.3d 36, 37, 528 N.E.2d 1250, quoting *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. The term "with certainty" generally refers to "whether a particular amount has been precisely determined as to its value in dollars and cents" and at times "also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays." *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 120, 9 OBR 342, 459 N.E.2d 520.

*Id.* at ¶ 28.

### Relator's Position

**{¶ 57}** Relator calculates that he is entitled to a back pay award of $13,091.76. He first calculates what he calls "gross back pay." He calculates "gross back pay" by adding all the days that he would have been assigned to work during the 2015-2016 school year and the 2016-2017 school year. There were 193 work days in each school year. Relator then multiplies the work days by 3 hours per work day times the hourly wage of $13.68.

According to relator:

[Stultz's] lost gross wages can be calculated as:
- 2015-2016 school year: $13.68/hour x 3 hours/day x 193 days = $7,920.72.
- 2016-2017 school year: $13.68/hour x 3 hours/day x 193 days = $7,920.72.
- $7,920.72 + $7,920.72 = **$15,841.44 gross back pay**

(Emphasis sic.) (Footnote omitted.) (Relator's Brief at 11.)

{¶ 58} From "gross back pay," relator makes two subtractions: "(1) the time Relator was away from work prior to his October 20, 2015, termination; and (2) the thirty day suspension levied by the Columbus Civil Service Commission." (Relator's Brief at 12.)

{¶ 59} With respect to the first subtraction, relator determines that he missed 37 days of work beginning the start of the 2015-2016 school year on August 26 to the October 20, 2015 discharge hearing. As earlier noted, the second subtraction is the 30-day suspension.

{¶ 60} According to relator:

Adding this thirty-day suspension * * * with the thirty-seven days missed by Stultz, we can calculate with certainty that Stultz's back pay can be reduced by sixty-seven days at the 2015-2016 pay rate. This calculation is as follows:

- 67 days x 3 hours/day x $13.68/hour=$2,749.68.
- $15,841.44 gross back pay—$2,749.68=**$13,091.76**.

(Emphasis sic.) (Relator's Brief at 13.)

**Medical Uncertainty**

{¶ 61} Among the problems with relator's back-pay award calculation is his failure to recognize the lack of medical certainty that relator was physically able to perform the job of food service helper during the time period claimed in a back pay award.

{¶ 62} Analysis begins with the April 5, 2017 report of Dr. Zaino recommending that relator "perform tasks related to walking, standing, lifting, bending, crouching and sitting 'as tolerated.' " It can be noted that Dr. Zaino's report was authored just two days following the April 3, 2017 adoption of the trial board's recommendation by the Columbus

Civil Service Commission. As earlier noted, the April 5, 2017 report of Dr. Zaino prompted school board physician, Dr. Stephens, to e-mail Adriane Thomas on April 7, 2017. (Adriane Thomas was employed by respondent as a personnel assistant.) In her April 7, 2017 e-mail, Dr. Stephens states: "Food service worker: has release with restrictions so will not be released to work at this time."

{¶ 63} Clearly, as of Dr. Stephens' April 7, 2017 e-mail, we have medical uncertainty as to whether relator is physically capable of performing the job of food service helper.

{¶ 64} Analysis continues with a review of the April 18, 2017 report of Dr. Zaino on a form provided by the U.S. Department of Labor. As earlier noted, on the form, Dr. Zaino wrote that relator will be incapacitated from April 5 to May 25, 2017. As earlier noted, Dr. Zaino's completion of the FMLA form on April 18, 2017 prompted another e-mail from Dr. Stephens. That is, on April 25, 2017, Dr. Stephens e-mailed Wanda L. Lillis indicating that she does not believe that relator can return to work as a food service worker.

{¶ 65} Again, as indicated by Dr. Stephens' April 25, 2017 e-mail and Dr. Zaino's April 18, 2017 report, we have continuing uncertainty as to whether relator is medically able to return to work as a food service helper.

{¶ 66} Analysis further continues with a review of the July 31, 2017 "Progress Note" of Dr. Zaino in which he opines that relator's physical demand level is "sedentary" and that relator should not return to the job of food service worker.

{¶ 67} As earlier noted, Dr. Zaino's July 31, 2017 progress notes prompted yet a third e-mail from Dr. Stephens on August 14, 2017. In this e-mail to Adriane Thomas, Dr. Stephens opined: "Mr. Stultz cannot perform the duties of his position. He agrees."

{¶ 68} With Dr. Stephens' August 14, 2017 e-mail, it became certain that relator cannot return to his job as a food service worker. The certainty that relator cannot return to his job as a food service worker also precludes back pay as does the lack of medical certainty beginning as early as the April 7, 2017 e-mail of Dr. Stephens.

{¶ 69} Based on the above analysis, the magistrate concludes that, as early as the April 7, 2017 e-mail of Dr. Stephens, it was medically uncertain whether relator could return to work. Accordingly, relator is clearly not entitled to back pay starting April 7, 2017 due to medical uncertainty.

## Mitigation of Damages

{¶ 70} In *Stacy,* the Supreme Court of Ohio had further occasion to succinctly summarize law pertinent here:

> "A public employee * * * who is wrongfully excluded from his position and sues to recover compensation for the period of exclusion, is subject to have his claim reduced by the amount he earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion." *State ex rel. Martin v. Columbus, Dept.* of Health (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph two of the syllabus. This principle of mitigation of damages is "an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." *Id.* at paragraph three of the syllabus; see, also, *Marshall v. Columbus* (1980), 61 Ohio St.2d 353, 355, 15 O.O.3d 436, 402 N.E.2d 509.
>
> The employee's due diligence in mitigating damages must be considered in light of employment opportunities based on the employee's education and experience. *State ex rel. Martin v. Columbus,* 58 Ohio St.2d at 266-267, 12 O.O.3d 268, 389 N.E.2d 1123. Nevertheless, the wrongfully discharged employee must accept similar employment in the same vicinity to mitigate damages:
>
> "'Being subject to the universal rule that a person injured by the act of another is bound to use ordinary diligence to make the damage as light as may be, the discharged employee must use ordinary care to obtain employment. He may not be required to seek elsewhere, or to engage in a different industry. *But he is bound to use ordinary effort to obtain similar employment in the same vicinity; at least if such employment is offered he is bound to take advantage of it.*'" (Emphasis added.) *Id.* at 264-265, 12 O.O.3d 268, 389 N.E.2d 1123, quoting *James v. Allen Cty.* (1886), 44 Ohio St. 226, 233-234, 6 N.E. 246; see, generally, Danne, Nature of Alternative Employment Which Employee Must Accept to Minimize Damages for Wrongful Discharge (1972), 44 A.L.R.3d 629, 640, Section 3 ("the general rule [is] that an individual who has been discharged in breach of his contract for a definite term of employment is obliged to mitigate damages by accepting available alternative employment of the same or similar character, but not employment of a significantly different kind"). (Footnotes omitted.)

*Id.* at ¶ 46-48.

{¶ 71} In its brief, respondent argues:

> Stultz offers no evidence other than a self-serving statement that he was unable to find gainful employment during a two year period. He provides no names of businesses or dates on which he might have applied for a position. He provides no information about any community agency or employment service that he might have enlisted to help with the job search. He provides no documentation that during the entire time period, he could find absolutely no work. In light of the fact that Stultz worked in the area of food service, it is difficult to comprehend that he could not find any similar part-time work. He was not required to find exactly the same work but only similar work, meaning in the same general geographic area and same industry. *Batavia* at *486. ("Nevertheless, the wrongfully discharged employee must accept similar employment in the same vicinity to mitigate damages.") Any restaurant or similar work would have sufficed. If Stultz was unable to work due to his medical issues and not being able to stand for long periods of time, then he also is not entitled to back pay from the District because standing was also a part of his job duties with the District.

(Respondent's Brief at 13-14.)

{¶ 72} In his reply brief, relator responds:

> Respondent argues that Stultz should be denied back pay because he has not proven that he was unable to find similar employment during his time of wrongful exclusion from the District. This flips the mitigation of damages doctrine on its head, claiming that Stultz has the burden of proving his attempts at finding other employment. Failure to mitigate damages, however, is an affirmative defense, and the burden of proof falls upon the employer to back up its claim.

(Relator's Reply Brief at 6-7.)

{¶ 73} The magistrate agrees with respondent. Only relator can identify the names of businesses and the dates on which he might have applied for a position.

{¶ 74} In his July 21, 2017 affidavit filed in this action, at paragraph seven, relator avers:

Since my separation from the Columbus City School District,
I have been unable to find gainful employment despite good
faith efforts.

{¶ 75} Given the lack of specificity, relator's averment can be viewed as self-serving and entitled to no weight.  That is, this court is not compelled to accept the averment as true.  Whatever burden respondent has in this action has been met by relator's failure to produce any evidence to support the averment in his affidavit.

{¶ 76} Accordingly, the magistrate concludes that relator is clearly not entitled to back pay starting October 20, 2015.

{¶ 77} Given the above analysis, it is the magistrate's decision that this court deny relator' request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as
error on appeal the court's adoption of any factual finding or
legal conclusion, whether or not specifically designated as a
finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii),
unless the party timely and specifically objects to that factual
finding or legal conclusion as required by Civ.R. 53(D)(3)(b).