[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 254.]

THE STATE EX REL. BOGGS ET AL., APPELLANTS, *v.* SPRINGFIELD LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.*, 1998-Ohio-249.]

*Public employment—When collective bargaining contract executed pursuant to R.C. Chapter 4117 includes an express termination date, the agreement may be deemed to continue by implied mutual assent after that date until either party to the agreement acts in a manner inconsistent with inference that parties wish to be governed by the contract.*

Where a collective bargaining contract executed pursuant to R.C. Chapter 4117 includes an express termination date, the agreement may be deemed to continue by implied mutual assent after that date only until such time as either party to the agreement acts in a manner inconsistent with the inference that both parties wish to be governed by the contract.

(No. 97-73—Submitted March 3, 1998—Decided June 24, 1998.)

APPEAL from the Court of Appeals for Summit County, No. 16451.

———————————

{¶ 1} This cause is before this court for the second time. In *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 94, 647 N.E.2d 788, we held that the court of appeals erred in dismissing the relators' complaint in mandamus pursuant to Civ.R. 12(B)(6) by issuing summary judgment in favor of the respondent, based on materials filed by the respondent that were extrinsic to the complaint. This court reversed and remanded the cause for further proceedings and resolution on the merits.

{¶ 2} On remand the parties engaged in discovery and filed cross-motions for summary judgment. The material facts are not in dispute.

**{¶ 3}** Relators-appellants are twenty-one school bus drivers and mechanics who, at one time, were subject to a collective bargaining agreement ("agreement") between their employer, respondent-appellee Springfield Local School District Board of Education ("board"), and Local 530 of the Ohio Association of Public School Employees/AFSCME-AFL-CIO ("union"). The agreement became effective on September 1, 1990, and, according to its terms, was to "remain in full force and effect until 11:59 p.m., August 31, 1993." Section 12.1(C), Article XII of the agreement, dealing with employee rights and obligations, provided that "[p]rovisions of this article supersede [R.C. 3319.081]."

**{¶ 4}** Early in 1993, the board notified the union that it was considering subcontracting its transportation services to a private company, Settle Service, Inc., a division of Laidlaw Transit, Inc. ("Settle"). As the board and the union commenced negotiations for a new collective bargaining contract on May 3, 1993, the union was strongly opposed to the school administration's proposal to privatize school bus services.

**{¶ 5}** On August 30, 1993, the union gave notice to the board, pursuant to R.C. 4117.14, of its intent to commence a strike on September 14, 1993 by bus drivers and mechanics. No new agreement was reached by August 31, the stated expiration date of the existing agreement. Nor did either side expressly ask the other for an extension of the expiration date of the agreement.

**{¶ 6}** On September 13, 1993, the board adopted a resolution that authorized the superintendent of the school district to enter into a transportation contract with Settle and stated that "[a]ll classifications * * * of bus driver and mechanic shall be abolished on the date the contract provided for in Section 1 of this resolution becomes effective." The authorization was contingent upon the school administration either (1) reaching agreement with the union on a new agreement or (2) meeting all obligations of R.C. Chapter 4117 and other legal requirements.

2

{¶ 7} On Tuesday, September 14, the union implemented the strike described in its prior notice.

{¶ 8} On Friday, September 17, sixteen of the relators and two other employees terminated their strike and delivered to the school superintendent a signed statement that they "wish[ed] to have [their] continuing contracts and other contracts honored by the School board and furthermore [wished] to go back to work as school bus drivers of the Springfield Local Board of Education."

{¶ 9} On the same date the same sixteen relators, and six other employees, initiated this action in mandamus. In their complaint, the relators alleged that seventeen of them "[held] continuing contracts of employment pursuant to R.C. § 3319.081."[1] They further alleged that the remaining five were "not yet continuing

---

1. R.C. 3319.081 provides:

"Except as otherwise provided * * *, in all school districts wherein the provisions of Chapter 124. of the Revised Code do not apply, the following employment contract system shall control for employees whose contracts of employment are not otherwise provided by law:

"(A) Newly hired regular nonteaching school employees, including regular hourly rate and per diem employees, shall enter into written contracts for their employment which shall be for a period of not more than one year. If such employees are rehired, their subsequent contract shall be for a period of two years.

"(B) After the termination of the two-year contract provided in division (A) of this section, if the contract of a nonteaching employee is renewed, the employee shall be continued in employment, and the salary provided in the contract may be increased but not reduced unless such reduction is a part of a uniform plan affecting the nonteaching employees of the entire district.

"(C) The contracts as provided for in this section may be terminated by a majority vote of the board of education. Such contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance. In addition to the right of the board of education to terminate the contract of an employee, the board may suspend an employee for a definite period of time or demote the employee for the reasons set forth in this division. The action of the board of education terminating the contract of an employee or suspending or demoting him shall be served upon the employee by certified mail. Within ten days following the receipt of such notice by the employee, the employee may file an appeal, in writing, with the court of common pleas of the county in which such school board is situated. After hearing the appeal the common pleas court may affirm, disaffirm, or modify the action of the school board.

"* * *

"(D) All employees who have been employed by a school district where the provisions of Chapter 124. of the Revised Code do not apply, for a period of at least three years on November 24, 1967, shall hold continuing contracts of employment pursuant to this section."

contract employees pursuant to R.C. § 3319.081, but, nevertheless, [had] a contract of employment for the school year 1993-1994 with Respondent." They sought a writ of mandamus to compel the board, *inter alia*, to reinstate them and recognize their "continuing contracts and written contracts * * * authorized by R.C.        §    3119.081."

{¶ 10} Thereafter, the drivers and mechanics went back to work driving buses and performing their other regular duties.

{¶ 11} On September 23, 1993, the board notified the president of the union of its intent to lay off all employees in the positions of bus driver and mechanic at the close of business on October 8, 1993, apparently based on its plan to proceed with privatization of school bus transportation services. The prior agreement at Section 12.2(A), Article XII, required that the union president "be notified two (2) weeks in advance of any anticipated layoff."

{¶ 12} On October 1, 1993, the board issued what it termed its "Final Offer," setting forth proposed guaranteed wages and benefits the school employees would receive under a privatized school transportation system. It notified the union that, absent its agreement to those terms, it would view the situation as one of "ultimate impasse," and would unilaterally implement the terms of the final offer at the close of business on October 8, 1993. The union rejected the offer on October 8, and demanded, in writing, that the board honor the union members' "existing and continuing contracts under O.R.C. 3319.081."

{¶ 13} On October 11, 1993, the board executed a contract with Settle pursuant to which Settle agreed to "provide drivers for the buses used in providing" transportation for the school district. Settle agreed to "offer all Existing Drivers employment" and to recognize their accumulated seniority and benefits. "Existing Drivers" were defined as "those drivers who were employed by the District as of September 1, 1993 and subsequently accept employment with the Company."

{¶ 14} On the same date the board deemed all of its positions of bus driver and mechanic to be abolished, consistent with its previous resolution. Thereafter, it appears an unknown number of the relators continued to drive school buses, but reported to Settle supervisors, and were deemed by the board and Settle to be employees of Settle.

{¶ 15} Based on these facts, the court of appeals granted summary judgment in favor of respondent, and again denied the relators the writ of mandamus they sought.

{¶ 16} The cause is now before us upon an appeal as of right.

_____

*Buckley King & Bluso* and *James E. Melle*, for appellants.

*Johnson, Balazs & Angelo* and *Michael J. Angelo*, for appellee.

_____

**MOYER, C.J.**

{¶ 17} We conclude that the relators are entitled to a writ of mandamus and therefore reverse the court of appeals.

{¶ 18} The board contends that the agreement was in effect until the point of "ultimate impasse" in renegotiations, and that the agreement authorized the layoffs of the relators. The relators contend that the agreement was not in effect, having expired prior to their return to work on or after September 17, 1993. Thus, we must initially determine whether the provisions of the agreement governed the legal rights and responsibilities of the board and the relators during the relevant events underlying this dispute, as asserted by the board, or whether to apply the law set forth in R.C. 3319.081, as argued by the relators.

{¶ 19} The board argues that, by declaring ultimate impasse on October 1, 1993, it manifested its intent to no longer be bound by the terms of the expired collective bargaining agreement. In *State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas* (1997), 78 Ohio St.3d 489, 493, 678

N.E.2d 1365, 1368, we rejected an argument similar to that made by the board in this case. The contention rejected was that a new agreement governed by R.C. Chapter 4117 resulted when an employer unilaterally implemented its final offer upon an ultimate impasse in renegotiations after an express termination date of a prior collective bargaining agreement. *Rootstown* did not, however, deal with the continued viability of a prior collective bargaining agreement subsequent to an express expiration date set forth in that agreement.

{¶ 20} We hold that where a collective bargaining agreement reached pursuant to R.C. Chapter 4117 includes an express termination date, the agreement may be deemed to continue by implied mutual assent after that date only until such time as either party to the agreement acts in a manner inconsistent with the inference that both parties wish to be governed by it.

{¶ 21} The record reveals that the agreement at issue in the case at bar was no longer in effect on or after September 17, 1993 when the relators returned to work. By that time the relators had already indicated their intent not to be bound by the terms of the expired agreement by returning to work after expressing their desire to be governed by statutory law rather than the expired agreement, and by filing this action in mandamus asserting that they were entitled to the protection offered by R.C. 3319.081.

{¶ 22} Thus, when the relators returned to work, no agreement existed to supersede the statutory rights imposed by the Revised Code,[2] and the employment relationship between the relators and the board was therefore governed by the Revised Code. Accordingly, we must determine the mutual rights and responsibilities of the

---

2. R.C. 4117.10 provides:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

parties according to the provisions of the Revised Code, rather than according to the expired agreement. More particularly, we must determine the extent of protection provided by R.C. 3319.081 to relators, nonteaching school employees of a local school district.

{¶ 23} Pursuant to R.C. 3319.081, local district school boards are required to enter into written employment contracts for a period of not more than one year with newly hired, regular nonteaching school employees. If those employees are then reemployed, the school board is required to enter into a written two-year contract with the employee. After three years of full-time employment, a nonteaching school employee is deemed to be employed pursuant to a continuing contract.

{¶ 24} R.C. 3319.081 gives statutory job security to nonteaching local school district employees, in that it provides for termination of employment contracts *only* for the express enumerated reasons set forth in R.C. 3319.081(C), or for "any other acts of misfeasance, malfeasance, or nonfeasance."

{¶ 25} Despite the clarity of the language of R.C. 3319.081, the board argues that it nevertheless had the authority to abolish relators' positions and to lay off the relators. The statute does not, however, authorize layoffs, nor has the board cited to us any other statutory provision authorizing layoffs of nonteaching local school district employees for economic reasons. The General Assembly has expressly provided authority for such layoffs in R.C. 124.321, 3319.02(C), and 3319.17, which authorize reductions in force based on economic considerations, even where those reductions result in layoffs or suspension of contracts of state civil servants, school district administrators, and teachers, respectively. See, also, *Ferdinand v. Hamilton Local Bd. of Edn.* (1984), 17 Ohio App.3d 165, 17 OBR 296, 478 N.E.2d 835, paragraph one of the syllabus ("There is no statutory provision for job abolishments or layoff of non-teaching personnel of a local school district."). We should not and, therefore, do not, judicially graft an exception to the express language of the statute.

**{¶ 26}** The relators have a clear legal right to recognition of their rights to continued employment pursuant to R.C. 3319.081. The judgment of the court of appeals is reversed, and the cause is remanded for application of this decision to each of the relators, including award of back pay to be calculated in accord with established principles. See, *e.g.*, *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462; *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 118, 9 OBR 342, 343, 459 N.E.2d 520, 522.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, DESHLER and LUNDBERG STRATTON, JJ., concur.

DANA A. DESHLER, JR., J., of the Tenth Appellate District, sitting for COOK, J.

————————