[Cite as *State ex rel. Klinger v. Coates*, 2025-Ohio-5401.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO EX REL. RICHARD
KLINGER, et al.

    Relators

    v.

JUDGE LISA COATES, et al.

    Respondents

C.A. No.    31362

ORIGINAL ACTION IN MANDAMUS

Dated: December 3, 2025

PER CURIAM.

{¶1} Relator, Richard Klinger, has petitioned this Court for a writ of mandamus and related declaratory relief on behalf of himself and as a representative for the City of Stow. He has named as respondents Stow Municipal Court Judge Lisa Coates, Stow Finance Director Kelly Toppin, and Summit County Fiscal Officer Kristen Scalise. Respondents have moved to dismiss the petition. Mr. Klinger has filed a brief in opposition, and Respondents have replied. Mr. Klinger has moved to strike a portion of the reply. Alternatively, he seeks leave to file a surreply. He also has moved for summary judgment on his petition. For the following reasons, we grant the motion to dismiss and deny all other outstanding motions.

### Civ.R. 12(B)(6) Review and the Facts Alleged by Mr. Klinger

{¶2} When this Court reviews a motion to dismiss under Civ.R. 12(B)(6), we must presume that all the factual allegations in the complaint are true and make all reasonable inferences

in favor of the nonmoving party. *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994). A complaint can only be dismissed when, having viewed the complaint in this way, it appears beyond doubt that the relator can prove no set of facts that would entitle him to the relief requested. *Goudlock v. Voorhies*, 2008-Ohio-4787, ¶ 7. "'Material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss.'" *State ex rel. Peoples v. Schneider*, 2020-Ohio-1071, ¶ 9, quoting *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, fn. 1 (1997). With the foregoing standard in mind, we turn to the facts alleged in the petition and the materials incorporated therein.

{¶3} Mr. Klinger worked at the Cuyahoga Falls Municipal Court until Cuyahoga Falls transferred its municipal court responsibilities to Stow. He then became the Court Administrator at the Stow Municipal Court. He held that position until September 26, 2024. On that date, Judge Coates, acting as administrative judge for the Stow Municipal Court, notified him that Stow was terminating his employment, effective immediately. Mr. Klinger was not offered the option of retiring before he was terminated. His written notice of termination indicated that Stow's Finance Department would send him any payouts due for unused vacation or personal leave. The notice did not address unused sick leave.

{¶4} When Cuyahoga Falls transferred its municipal court responsibilities to Stow, Stow passed an ordinance. A portion of the ordinance specified that Stow would recognize unpaid sick leave balances accrued by former employees of the Cuyahoga Falls Municipal Court. The ordinance set forth the circumstances under which that leave would be paid out and various restrictions and caps on those payouts.

{¶5} Over the course of his employment with Cuyahoga Falls and Stow, Mr. Klinger accumulated 2,332.76 hours of unused sick leave. Five days after he was terminated, he "retired

from public service." He demanded that Judge Coates authorize the release of the value of 1,000 hours of his unused sick leave due to his retirement. According to Mr. Klinger, the value of that sick leave was $54,498.00. When Judge Coates did not act on his demand, Mr. Klinger contacted the Stow Law Director through his attorney. He demanded that the Law Director file a mandamus action to procure his requested relief. When the Law Director failed to do so, Mr. Klinger filed this action.

### Mr. Klinger's Petition and Requests for Relief

{¶6} Mr. Klinger has named three respondents in his petition. He has named Judge Coates in her capacity as presiding judge of the Stow Municipal Court and the appointing authority for the position of Court Administrator. He has named Stow's Finance Director to oversee the disbursement of city funds because, during his tenure as Court Administrator, the city paid 60% of his compensation. Finally, he has named Summit County's Fiscal Officer to oversee the disbursement of county funds because, during his tenure as Court Administrator, the county paid 40% of his compensation.

{¶7} Apart from naming himself as Relator, Mr. Klinger has filed his petition on behalf of the City of Stow. His complaint alleges that Stow is a party needed for just adjudication. It further alleges that, as a city taxpayer, Mr. Klinger was authorized to file this action on behalf of Stow once its Law Director failed to act on his written request to do so.

{¶8} Mr. Klinger's petition contains two counts: a count for mandamus relief and a count for declaratory relief. First, he seeks to compel Respondents to remit and/or authorize the remittance of the value of 1,000 hours of his unused sick leave. According to Mr. Klinger, that money became due upon his retirement (i.e., October 1, 2024). He asks this Court to order Respondents to remit that value, along with a liquidated amount defined by Ohio's Prompt Pay

Act. Second and relatedly, Mr. Klinger seeks a declaration regarding his eligibility for the value of 1,000 hours of sick leave, the amount Respondents are obligated to remit, and the legal consequences of their failure to do so. He asks us to declare that: (1) Respondents have a clear legal duty to honor the obligations owed to him by operation of law, (2) he has no other adequate remedy at law or equity; and (3) he has satisfied all prerequisites and is not otherwise disqualified from receiving the value of 1,000 hours of sick leave. Lastly, Mr. Klinger seeks an award of prejudgment interest from October 1, 2024, an award of attorney fees, and the costs of this action.

**Mr. Klinger Lacks Standing to Bring Suit on Behalf of the City of Stow**

{¶9} We begin by addressing Mr. Klinger's standing to bring suit on behalf of Stow. "Under Ohio's taxpayer-lawsuit provisions, a taxpayer may file an action on 'behalf of a municipal corporation,' R.C. 733.59, . . . if the government fails to pursue a lawsuit after a written request from the taxpayer." *State ex rel. Martens v. Findlay Municipal Court*, 2024-Ohio-5667, ¶ 24. "A taxpayer action is properly brought only when the right under review in the action is one benefiting the public." *State ex rel. Fisher v. Cleveland*, 2006-Ohio-1827, ¶ 10. A taxpayer action will not lie to secure a personal benefit. *State ex rel. Karwowski v. Granger Twp. Trustees*, 2008-Ohio-4946, ¶ 29-30 (9th Dist.).

{¶10} In their motion to dismiss, Respondents argue that Mr. Klinger lacks standing to bring a taxpayer suit on behalf of Stow. They argue that the only reason he filed his petition was to secure a personal benefit. In opposing their argument, Mr. Klinger insists that the public has an interest in seeing their city and county officials held accountable for failing to discharge their official duties. He also argues that his suit will aid other similarly situated employees who otherwise might be disqualified from receiving an earned benefit upon retiring from public service.

{¶11} Initially, we note that Mr. Klinger relies on new evidence in support of his arguments. He cites facts alleged in two new affidavits that he has attached to his brief in opposition. Because our review of a motion to dismiss is limited to facts alleged in the complaint and the materials incorporated therein, we cannot consider his new evidence in ruling on the motion to dismiss. *See State ex rel. Seikbert*, 69 Ohio St.3d at 490; *State ex rel. Peoples*, 2020-Ohio-1071, at ¶ 9, quoting *State ex rel. Crabtree*, 77 Ohio St.3d at 249, fn. 1.

{¶12} Even taking the factual allegations in the complaint as true and making all reasonable evidence in favor of Mr. Klinger, he has not shown that he has standing to bring a taxpayer suit on behalf of Stow. Mr. Klinger aims to secure a personal benefit, the value of his unused sick leave and related interest and damages. Any right he has to his unpaid sick leave and/or associated damages is not a public right. *See State ex rel. Caspar v. City of Dayton*, 53 Ohio St.3d 16, 20 (1990) (taxpayer standing did not exist where public employees sought to compel payment for vacation leave). "[W]hile . . . there may be some public benefit when a private litigant prevails against the government, ancillary public benefits are not enough to confer taxpayer standing." *State ex rel. Phillips Supply Co. v. Cincinnati*, 2012-Ohio-6096, ¶ 22 (1st Dist.). Because Mr. Klinger lacks standing to bring a taxpayer suit on behalf of Stow, we grant Respondents' motion to dismiss that aspect of his petition.

**Declaratory Relief**

{¶13} Apart from seeking a writ of mandamus, Mr. Klinger has petitioned this Court for declaratory relief. "Actions for a declaratory judgment . . . are not within a court of appeals' original jurisdiction." *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2023-Ohio-3382, ¶ 34. "If the allegations of the complaint for writ of mandamus show the real objective is a declaratory judgment, 'the complaint does not state a cause of action in mandamus and must be dismissed for

want of jurisdiction.'" *State ex rel. Baughman Twp. v. Underwood*, 2024-Ohio-771, ¶ 4 (9th Dist.), quoting *State ex rel. Obojski v. Perciak*, 2007-Ohio-2453, ¶ 13.

{¶14} This Court lacks jurisdiction to issue a declaratory judgment on behalf of Mr. Klinger. Accordingly, Respondents' motion to dismiss the declaratory judgment aspect of Mr. Klinger's petition is granted.

**Mandamus**

{¶15} "For a writ of mandamus to issue, a relator must demonstrate that (1) the relator has a clear legal right to the relief prayed for, (2) respondent is under a corresponding clear legal duty to perform the requested acts, and (3) relator has no plain and adequate legal remedy." *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 81 Ohio St.3d 173, 176 (1998). Mr. Klinger must demonstrate all three elements to secure a writ of mandamus. He "must provide entitlement to the writ by clear and convincing evidence." *State ex rel. Manley v. Walsh*, 2014-Ohio-4563, ¶ 18.

**Does Mr. Klinger have an Alternative Legal Remedy?**

{¶16} "[A]s a general rule, a public employee's claim for wages or benefits is actionable in mandamus." *State ex rel. Manley v. Walsh*, 2014-Ohio-4563, ¶ 25. The general rule applies when the right to relief is "clear and the amount established with certainty." *Id.* "The term 'with certainty' generally refers to 'whether a particular amount has been precisely determined as to its value in dollars and cents' and at times 'also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays.'" *State ex rel. Tempesta v. City of Warren*, 2011-Ohio-1525, ¶ 27, quoting *State ex rel. Hamlin v. Collins*, 9 Ohio St.3d 117, 120 (1984). Where the petitioner "has a clear legal right to compensation . . . and [the] respondent has a clear legal duty to pay such compensation, mandamus is the appropriate

remedy." *State ex rel. Madden v. Windham Exempted Village Sch. Dist. Bd. of Educ.*, 42 Ohio St.3d 86, 88 (1989). Conversely, "[w]hen the underlying material facts are in dispute, the appropriate remedy for a public employee is not mandamus, but a declaratory judgment . . . ." *State ex rel. Manley* at ¶ 26.

{¶17} Respondents argue that Mr. Klinger is not entitled to a writ of mandamus because he has an adequate legal remedy. They argue this case is analogous to *State ex rel. Manley* and better suited to a declaratory judgment action in the court of common pleas. Mr. Klinger disagrees. He insists *State ex rel. Manley* is distinguishable because, unlike this case, it involved a factual dispute. Presuming the truth of the factual allegations in the complaint and making all reasonable inferences in favor of Mr. Klinger, we agree his claim for relief, if proven, is actionable in mandamus.

{¶18} Mandamus relief was not available in *State ex rel. Manley* because the underlying facts were in dispute. *Id.* at ¶ 26. The parties set forth competing theories and evidence regarding Mr. Manley's employment classification, and therefore, his appropriate pay grade and right to specific compensation. *Id.* at ¶ 27. The Supreme Court determined that his "right to back pay [was] not so clear as to justify issuance of the extraordinary writ of mandamus . . . ." *Id.* at ¶ 30. Due to the lack of certainty, the Supreme Court concluded that "an action for declaratory judgment [was] more suited to resolving [his] claim." *Id.*

{¶19} Mr. Klinger's entitlement to relief depends upon a question of law rather than fact. *See* Discussion, *supra*. There is no dispute that he worked as Court Administrator for the Stow Municipal Court following his transfer from Cuyahoga Falls. There is no dispute about the amount of unused sick time he accrued or his rate of pay. Finally, there is no dispute that he was terminated on September 26, 2024, and, five days later, he "retired from public service." The question is

whether, as a matter of law, his termination rendered him ineligible to receive a payout for his unused sick leave. Because the answer to that question and any relief owed him can be established with certainty based on application of the law, Mr. Klinger need not pursue an alternative remedy. His claim for benefits, if proven, is actionable in mandamus. *See id.* at ¶ 25. *See also State ex rel. Madden*, 42 Ohio St.3d at 88.

**Has Mr. Klinger Established a Clear Legal Right to Relief?**

{¶20} R.C. 124.39 addresses the conversion of sick leave for public employees. It permits political subdivision employees with at least ten years of service to elect a cash payout for their unused sick leave "at the time of retirement *from active service* with the political subdivision . . . ." (Emphasis added.) R.C. 124.39(B). The Ohio Supreme Court has interpreted that language to mean that a public employee lacks a statutory right to convert his unused sick leave to cash if his public employment ends before he retires. *Davenport v. Montgomery County*, 2006-Ohio-2034, ¶ 16. Nevertheless, R.C. 124.39(C) allows individual political subdivisions to adopt their own policies "permitting an employee to receive payment upon a termination of employment other than retirement . . . ." It is Mr. Klinger's position that Stow adopted such a policy.

{¶21} When Cuyahoga Falls transferred its municipal court responsibilities to Stow, Stow passed Ordinance No. 2009-169 ("the Transfer Ordinance"). Mr. Klinger quoted a portion of the Transfer Ordinance in his petition. Respondents then attached the whole ordinance to their motion to dismiss. Although Mr. Klinger's petition did not include the entire ordinance, courts may "take judicial notice of appropriate matters in considering a motion to dismiss . . . without having to convert it to a motion for summary judgment . . . ." *State ex rel. Neff v. Corrigan*, 75 Ohio St.3d 12, 16 (1996). This Court may take judicial notice "'of a municipal ordinance within [our] territorial jurisdiction . . . without advance notice in the pleading of a party or other written

notice.'" *Bowers Constr. Co., Inc. v. Chuparkoff*, 2010-Ohio-419, ¶ 14, quoting Civ.R. 44.1(A)(2). Accordingly, we take judicial notice of the Transfer Ordinance and two related ordinances.

{¶22}  The plain language of the Transfer Ordinance indicates that Stow approved it to amend Ordinance No. 2008-128 ("the 2008 General Payroll Ordinance").  The purpose of the amendment was "to establish a new Section 5.00 . . ."  The new Section was titled "Clarification of Benefits for Stow Municipal Court Employees[.]"  It addressed former employees of the Cuyahoga Falls Municipal Court and provided, in relevant part, as follows:

> 5.05  Sick Leave.  Stow will allow credit to Municipal Court employees for sick leave balances accumulated and not paid by Cuyahoga Falls and the balances will be eligible for retirement payout to a maximum of 1,000 hours, regardless of withdrawals prior to January 1, 2009, all in accordance with the Stow General Payroll Ordinance (i.e., the sick leave must have been earned in Cuyahoga Falls or Stow, not elsewhere for payoff at retirement).
>
> Employees reaching their ten-year anniversary of employment with the Cuyahoga Falls Municipal Court prior to January 1, 2009 will be able to cash out up to 960 hours of sick leave accumulated during employment with Cuyahoga Falls, if they leave employment with Stow in good standing.  Those leaving involuntarily and/or not in good standing will not be eligible to cash in such sick leave (except at retirement).

Stow Ordinance No. 2009-169, Section 5.05.  Mr. Klinger relies on Section 5.05 to establish his clear legal right to a payout for 1,000 hours of his unused sick leave.

{¶23}  In moving to dismiss the petition, Respondents argue that Mr. Klinger lacks a clear legal right to be paid the value of his unused sick leave.  They note that Mr. Klinger did not retire from Stow Municipal Court; he was terminated.  He then "retired from public service" several days later.  Respondents argue that Mr. Klinger's termination rendered him ineligible for any payout on his unused sick leave.  They cite case law as well as Stow Ordinance No. 2023-081 ("the 2023 General Payroll Ordinance").

{¶24} Stow adopted the 2023 General Payroll Ordinance while Mr. Klinger was still employed as Court Administrator for the Stow Municipal Court. The 2023 General Payroll Ordinance repealed the 2008 General Payroll Ordinance while leaving the Transfer Ordinance intact (i.e., the ordinance specifically related to employees transferring from Cuyahoga Falls Municipal Court). The 2023 General Payroll Ordinance specifically addressed accrued sick leave and provided, in relevant part, as follows:

> 8. . . . [U]pon a bona fide service retirement under the Ohio Public employee's Retirement System (P.E.R.S.) or other recognized State of Ohio pension fund, while an employee of the City of Stow, . . . for earned but unused sick leave, a cash payment of one hundred percent (100%) equivalent to a maximum of 1,000 hours of sick leave shall be paid . . . to such employee in lump sum . . . .

> 9. An employee who does not retire but who terminates City employment or whose City employment is terminated for any reason or who transfers employment, shall not be eligible for such cash sick leave benefit.

Stow Ordinance No. 2023-081, Section 115.02(b)(9).

{¶25} In seeking to dismiss Mr. Klinger's petition, Respondents rely on the above-quoted portions of the 2023 General Payroll Ordinance. They argue that, due to his termination, Mr. Klinger was no longer an employee of the City of Stow when he claimed to have retired. Because he was terminated, Respondents argue that he was ineligible for a payout on his unused sick leave.

{¶26} Mr. Klinger insists that Respondents cannot rely on the 2023 General Payroll Ordinance because it did not exist when he transferred to Stow. He argues that, at the time he transferred to Stow, the Transfer Ordinance vested him with the right to receive payment for his unused sick leave. According to Mr. Klinger, Stow could not impair his vested right by passing another ordinance fourteen years later. Mr. Klinger argues that the 2023 General Payroll Ordinance is inapplicable to him.

{¶27}  Upon review, we need not determine whether the 2023 General Payroll Ordinance applies to Mr. Klinger.  That is because the 2008 General Payroll Ordinance, which was in effect at the time of his transfer to Stow, contained virtually identical provisions regarding the terms of unused sick leave payout.

{¶28}  The Transfer Ordinance specifically provided that sick leave balances accrued by former Cuyahoga Falls employees would be "eligible for retirement payout to a maximum of 1,000 hours . . . *all in accordance with the Stow General Payroll Ordinance* . . . ."  (Emphasis added.) Section 5.05.  The 2008 General Payroll Ordinance in effect at that time provided, in relevant part, as follows:

> 6. . . . . [U]pon a bona fide service retirement under the Ohio Public employee's Retirement System (P.E.R.S.) or other recognized State of Ohio pension fund, while an employee of the City of Stow, . . . for earned but unused sick leave, a cash payment of one hundred percent (100%) equivalent to a maximum of 1,000 hours of sick leave shall be paid . . . to such employee in lump sum . . . .

> 7. An employee who does not retire but who terminates City employment or whose City employment is terminated for any reason or who transfers employment, shall not be eligible for such cash sick leave benefit.

Stow Ordinance No. 2008-128, Section 2.03.  Thus, much like the 2023 General Payroll Ordinance, the former version only provided for payment of sick leave benefits at retirement taken "while an employee of the City of Stow . . . ."  Stow Ordinance No. 2008-128, Section 2.03(6).  It also explicitly indicated that terminated employees were not eligible to receive that benefit.  *Id.* at Section 2.03(7).

{¶29}  According to Mr. Klinger, the plain language of the Transfer Ordinance authorized a payout for sick leave at retirement, regardless of when retirement occurred.  As noted, the Transfer Ordinance provided as follows:

> 5.05    Sick Leave.  Stow will allow credit to Municipal Court employees for sick leave balances accumulated and not paid by Cuyahoga Falls and the balances will

be eligible for retirement payout to a maximum of 1,000 hours, regardless of withdrawals prior to January 1, 2009, all in accordance with the Stow General Payroll Ordinance (i.e., the sick leave must have been earned in Cuyahoga Falls or Stow, not elsewhere for payoff at retirement).

Employees reaching their ten-year anniversary of employment with the Cuyahoga Falls Municipal Court prior to January 1, 2009 will be able to cash out up to 960 hours of sick leave accumulated during employment with Cuyahoga Falls, if they leave employment with Stow in good standing. Those leaving involuntarily and/or not in good standing will not be eligible to cash in such sick leave (except at retirement).

Stow Ordinance No. 2009-169, Section 5.05. Mr. Klinger focuses on the last sentence of the second paragraph. He argues that the "except at retirement" parenthetical means that, once he retired, he was eligible for a sick leave benefit payout regardless of his involuntary termination.

{¶30} Mr. Klinger's proffered interpretation of the Transfer Ordinance is unavailing. Notably, he seeks relief under the first paragraph of the Transfer Ordinance, not the second paragraph. His argument assumes that the last sentence of the second paragraph also applies to the first paragraph of the section. Even if it does, however, nothing in that sentence suggests that a former municipal employee is eligible to retire *once termination has already occurred*. It merely recognizes that, in certain instances, an employee might retire in lieu of being terminated. That reading of the last sentence is consistent the remainder of the Transfer Ordinance and the 2008 General Payroll Ordinance. *See State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 146-02, West End Blight Designation, et al. v. City of Lakewood*, 2003-Ohio-5771, ¶ 20 (statutes and municipal charters must be construed in pari materia to harmonize separate provisions). As noted, the Transfer Ordinance required payouts be made "in accordance with the Stow General Payroll Ordinance[,]" and the 2008 General Payroll Ordinance only authorized sick leave benefit payouts for those retiring from active service without having been terminated. *See* Stow Ordinance No. 2008-128, Section 2.03(6)-(7).

{¶31} Even taking the factual allegations in the complaint as true and making all reasonable inferences in favor of Mr. Klinger, he has not shown that he has a clear legal right to the relief he seeks. There is no dispute that he was terminated before he "retired from public service." Thus, at the time he "retired", he was no longer an employee of Stow. The plain language of the Transfer Ordinance provided that Stow would credit former Cuyahoga Falls Municipal Court employees with accrued, unused sick leave balances "in accordance with the Stow General Payroll Ordinance . . . ." Stow Ordinance No. 2009-169, Section 5.05. The 2008 General Payroll Ordinance did not allow terminated employees to receive a cash sick leave benefit. Stow Ordinance No. 2008-128, Section 2.03(7). It only authorized payment of that benefit "upon a bona fide service retirement . . . while an employee of the City of Stow . . . ." *Id.* at Section 2.03(8). Because Mr. Klinger was terminated before he "retired from public service", he has no clear legal right to the relief he seeks. Thus, he is not entitled to a writ of mandamus. Respondents' motion to dismiss that aspect of his petition is granted.

### Conclusion

{¶32} This Court has reviewed the allegations of Mr. Klinger's complaint. For the reasons outlined above, he cannot prevail on the facts alleged in the complaint. After presuming the truth of all material factual allegations, and making all reasonable inferences in his favor, it appears beyond doubt that Mr. Klinger can prove no set of facts entitling him to the requested extraordinary relief. Accordingly, this case is dismissed. All other outstanding motions are denied.

{¶33} Costs of this action are taxed to Mr. Klinger. The clerk of courts is hereby directed

to serve upon all parties not in default notice of this judgment and its date of entry upon the journal.

*See* Civ.R. 58(B).

                                                      _____

                                                      SCOT A. STEVENSON
                                                      FOR THE COURT

SUTTON, J.
<u>CONCUR.</u>

CARR, J.
<u>DISSENTS</u>.

<u>APPEARANCES:</u>

S. DAVID WORHATCH, Attorney at Law, for Relators.

AMANDA S. SMITH and MICHAEL P. KARST, Attorneys at Law, for Respondents Judge Lisa Coates and Kelly Toppin.

MARRETT W. HANNA, Attorney at Law, for Respondent Kristen Scalise.